# IN THE OREGON TAX COURT

## WILLAMETTE INDUSTRIES, INC., & SUBSIDIARIES
and Willamette Industries, Inc.,
transferee of
Bend Willamette Corporation

*v.*

## DEPARTMENT OF REVENUE

(TC 3050)

Charles P. Duffy, Duffy, Kekel, Jensen & Bernard, Portland, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered October 6, 1992.

**CARL N. BYERS, Judge.**

Plaintiffs appeal from defendant's Opinion and Order No. 86-1894 which upheld assessed deficiencies for corporate excise taxes for tax years 1971 through 1983 and Multnomah County business income taxes for the years 1976 through 1981.

Willamette Industries, Inc. (Willamette), is an Oregon corporation engaged in the unitary business of forest management, logging and the production of various wood and paper products. It is a medium-sized forest products firm with approximately 35 manufacturing plants in 17 states. It has large holdings of timberlands, principally in Oregon and Louisiana.

This appeal presents seven issues. The parties have stipulated some facts and trial was held on the disputed facts. The court will address each issue separately.

## ALLOCATION OR APPORTIONMENT OF OIL AND GAS ROYALTIES

The parties stipulate that during 1971 through 1983, Willamette, and two of its subsidiaries, received net oil and gas royalty income from unrelated companies drilling on portions of their timberlands in Louisiana, Arkansas and Oregon. The stipulation specifies the amount of income received by each company during each year in each state. Willamette allocated the oil and gas royalties from the timberland to the states where the timberland was located. Most of the oil and gas royalty income was allocated to either Louisiana or Arkansas.

The issue is whether these oil and gas royalties constitute "business income" or "nonbusiness income." If

they are business income, as defined by ORS 314.610(1), they are not allocable to the state from which the income arises but must be apportioned by formula. ORS 314.615.

The applicable law and regulation is found in joint Exhibit 1-A. The basic law is the Uniform Division of Income for Tax Purposes Act (UDITPA), adopted by Oregon in 1965 when it became a party to the Multistate Tax Compact. Or Laws 1965, ch 152, §§ 20, 21. The Multistate Tax Commission approved uniform allocation apportionment regulations on September 10, 1971,[1] which Oregon adopted. OAR 150-314.610 (1)-(B), as found in joint Exhibit 1-A, states in part:

> "* * * In general, all transactions and activities of the taxpayer which are dependent upon or contribute to the operations of the taxpayer's economic enterprise as a whole constitute the taxpayer's trade or business and will be transactions and activity arising in the regular course of, and will constitute integral parts of, a trade or business. * * *
>
> "(1) *Rents and royalties from real and tangible personal property.* Rental income from real and tangible property is business income if the property with respect to which the rental income was received is used in the taxpayer's trade or business * * *.
>
> "* * * * *
>
> "*Example (iii):* The taxpayer operates a multistate chain of men's clothing stores. The taxpayer purchases a five-story office building for use in connection with its trade or business. It uses the street floor as one of its retail stores and the second and third floors for its general corporate headquarters. The remaining two floors are leased to others. The rental of the two floors is incidental to the operation of the taxpayer's trade or business. The rental income is business income."

Plaintiffs argue that they play a passive role in the production of the royalty income. Plaintiffs use an outside consultant and do little more than process royalty checks. However, the degree of involvement by plaintiffs' employees is not the issue. What is determinative here is that the income arises from plaintiffs' business assets. If plaintiffs invested in oil lands devoid of timber with no relation to plaintiffs' trade

---

[1] Hellerstein, *Corporate Income and Franchise Taxes*, ¶ 9.7(2) n 103 (1983) (citation omitted).

or business, the income would be nonbusiness income and subject to allocation. Here, however, the timberland is acquired, managed and used in plaintiffs' trade or business. The oil and gas royalties are simply incidental business income arising from this business property. The court finds that it is similar to the example in the regulations of the clothing store business which rents part of its building.

■  Plaintiffs cite the decision of the California State Board of Equalization in the appeal of *In re Masonite Corporation*, (Cal St Bd of Equal Mar. 3, 1987) (LEXIS, Sttax library, Cal file). In that case, the board, on facts very similar to plaintiffs' circumstances, decided oil and gas royalties were nonbusiness income. After reviewing that decision, the court concludes it is not a correct application of Oregon law. Although the board was interpreting UDITPA, it erred in its application. The board applied the regulation dealing with patent and copyright royalties rather than the regulation dealing with the multistate chain of men's clothing stores. This is illogical since patent and copyright royalties are clearly intangibles whereas oil and gas royalties arise from real property. Also, the board concluded that each oil well rendered three acres of timberland unavailable for timber production, thereby converting that property to a nonbusiness asset. This conclusion ignores the express language of the statute which, in defining business income, indicates that it includes income from property "if the acquisition, the management, use or rental, * * * constitute integral parts of the taxpayer's regular trade or business operations." ORS 314.610(1). The logic of the California State Board of Equalization is similar to saying that, if the multistate men's clothing store rented two floors of the building, it thereby made those floors unavailable for use as a clothing store and converted them to a nonbusiness asset. This is inconsistent with the distinctions intended by the act and regulations. Plaintiffs' timberlands are business assets constituting an integral part of their regular trade or business operations. The court finds the oil and gas royalties arising from such property are business income subject to apportionment.

Plaintiffs argue that no Oregon statute taxes nonbusiness rents and royalties from real property located outside of Oregon. Plaintiffs believe this omission leads "to

the logical conclusion that Willamette's nonbusiness rents and royalties from out-of-state property are not subject to tax in Oregon." Plaintiffs cite *Tucker-Ottmar Farms v. Dept. of Rev.*, 4 OTR 179, 182 (1970), in support of its position. Plaintiffs err in their assumption that the oil and gas royalty income involved here is "nonbusiness" income. It is business income arising from property which is an integral part of plaintiffs' regular trade or business and is subject to apportionment.

## PLYWOOD ANTI-TRUST LITIGATION DEDUCTION

Plaintiffs were one of several plywood manufacturers that were sued for antitrust violations.[2] The claimants won a jury verdict which was affirmed by the Fifth Circuit Court of Appeals on September 8, 1981. *In re Plywood Antitrust Litigation*, 655 F2d 627 (5th Cir 1981). On December 28, 1981, plaintiffs obtained a letter of credit for $20,000,000 and transferred it to an irrevocable trust to provide satisfaction of the asserted liability. Plaintiffs and the other defendants then petitioned for and obtained a writ of certiorari from the United States Supreme Court. While that case was pending, the parties to the antitrust litigation settled the case. Draws were made against the letter of credit in 1984 and 1985. *Willamette Indus., Inc. v. Commissioner*, 92 TC 1116, 1119-21 (1989).

Plaintiffs claimed a deduction against their federal income taxes for 1981. Plaintiffs claimed that the transfer of the letter of credit in 1981 was deductible under IRC § 461(f).[3]

---

[2] The statement of facts are taken from the parties' stipulation and *Willamette Indus., Inc. v. Commissioner*, 92 TC 1116 (1989), to which the stipulation refers the reader for facts.

[3] IRC § 461(f) provides:

"(f) Contested liabilities.

"If—

"(1) the taxpayer contests an asserted liability,
"(2) the taxpayer transfers money or other property to provide for the satisfaction of the asserted liability,
"(3) the contest with respect to the asserted liability exists after the time of the transfer, and
"(4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer (or for an earlier taxable year) determined after application of subsection (h),

The Internal Revenue Service disallowed the deduction and plaintiffs appealed this issue and several others to the United States Tax Court. The court severed this issue from the other issues for purposes of decision. *Id.* at 1117. The United States Tax Court ruled the payment was not deductible in 1981. *Id.* at 1127. However, since that issue is only one of several, judgment has not yet been entered in the case and plaintiffs represent that the case will be appealed.

Plaintiffs claim the transfer of the letter of credit is deductible in 1981 for purposes of Oregon's corporate excise taxes and the Multnomah County business income taxes. Plaintiffs argue that Oregon law is based on federal law as it existed prior to the "double reverse" which occurred in the federal law. In 1945, the Court of Claims held payment of an asserted contingent liability rendered the liability accrued for purposes of an accrual-basis taxpayer. *Chestnut Sec. Co. v. United States*, 62 F Supp 574, 45-2 USTC ¶ 9405, (Ct Cl 1945). In 1961, this position was reversed by the United States Supreme Court in *United States v. Consolidated Edison Co.*, 366 US 380, 81 SC 1326, 6 L Ed 2d 356 (1961). That result was in turn reversed by enactment of IRC § 461(f). Based on this history, plaintiffs conclude that Oregon law is essentially the same as that which existed from 1945 to 1961.

■ The fallacy of plaintiffs' position is assuming that the letter of credit constituted payment. As succinctly stated by the United States Tax Court, "[p]etitioner thus exchanged a contingent liability to the antitrust plaintiffs for a contingent liability to the bank." *Willamette* , 92 TC at 1125. In short, the United States Tax Court held the letter of credit was not "payment" but nothing more than the bank bonding the liability. This is the correct analysis and dispositive of the issue here. If the letter of credit is not payment, and the court finds it is not, then it was not deductible in 1981 regardless of which law applied at the time.

## DIVIDEND EXCLUSION

The parties stipulate that during 1973-78 plaintiffs owned 50 percent of the voting stock of Woodard-Walker-

---

"then the deduction shall be allowed for the taxable year of the transfer. This subsection shall not apply in respect of the deduction for income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States.

Willamette, Inc. (Woodard-Walker), an Oregon corporation. Woodard-Walker paid dividends to plaintiffs. Plaintiffs subtracted these dividends from their federal net income in computing their Oregon net income to be apportioned. Woodard-Walker was a corporation subject to tax under ORS chapter 317 and paid the minimum tax of $10 per year. Plaintiffs claim the dividends received from Woodard-Walker were exempt from tax under ORS 317.110(2)[4] and OAR 150-317.110(2).

For the years at issue, ORS 317.110 listed specific items which were excluded from gross income. ORS 317.110 (2) provided:

> "The amount received as dividends from a corporation subject to tax under this chapter, by a corporation authorized to hold stock in other corporations and holding 50 percent or more of the voting stock of the corporation which paid the dividend, but only to the extent that the income of the corporation which paid the dividend has been included under this chapter in the measure of the tax paid by the corporation paying the dividend."

Plaintiffs contend that Woodard-Walker's payment of the minimum tax of $10 per year under ORS 317.090 satisfied the requirement of the statute that the "measure of the tax" be "included under this chapter." This argument mangles the statute. The statute requires the income, from which the dividends are paid, be included in the measure of the tax paid. Plaintiffs' Exhibit 3 shows Woodard-Walker had an income of $2,353,717. All of this income was apportioned out of Oregon, leaving Woodard-Walker obligated to pay only the $10 minimum annual tax. Because none of Woodard-Walker's income from which it paid the dividend was included in the measure of the tax it paid under ORS chapter 317, none of the dividends qualify for exclusion under ORS 317.110(2).

## MICHIGAN SINGLE BUSINESS TAX

Plaintiffs now claim a deduction for Michigan single business tax paid for 1977. Plaintiffs also claimed a deduction for the same tax for the years 1978 through 1983.

---

[4] It should be noted that ORS 317.110 was repealed by Or Laws 1983, ch 162, § 57.

Prior to 1987, defendant took the position that the Michigan single business tax was not deductible as a business expense because it was essentially an income tax. In *Kellogg Sales Co. v. Dept. of Rev.*, 10 OTR 480 (1987), this court held to the contrary. Defendant subsequently changed its position and amended its administrative rule. *See* OAR 150-317.314.

Plaintiffs claimed the Michigan single business tax as a deductible expense in the years 1980 through 1983, and when defendant disallowed it, they protested and appealed. Defendant now concedes the tax is deductible for those years. However, plaintiffs did not claim a deduction for the tax on their returns for the years 1977 through 1979 (and consequently had not protested or appealed its disallowance). However, defendant also allowed the deduction for 1978 and 1979 because it considers those two years still open to audit.

The issue is whether a deduction for taxes paid in 1977 is barred by the statute of limitations.

Plaintiffs argue that OAR 150-317.314 allows the deduction because 1977 is a "year[ ] which [is] open to audit." OAR 150-317.314. Plaintiffs point out that in defendant's letter of May 2, 1985, summarizing the asserted deficiencies for the years 1971 through 1983, defendant stated:

"Tax years 1974, 1975, 1976 and 1977 are open for issuance of a refund or notice of deficiency. The federal determination for these tax years has not been finalized nor has the federal assessment been made. A settlement agreement has been reached with the Internal Revenue Service. Presently, the settlement agreement is pending approval by the Internal Revenue Service after which the decision documents will be submitted to the court to have the decision entered.

"Tax years 1978 and later are presently under federal audit or in the federal administrative appeals process. These tax years are open for issuance of a refund or notice of deficiency."

Defendant's witness testified that Willamette's partial settlement agreement with the IRS, on which defendant based its audit, did not pertain to 1977. However, defendant did not introduce a copy of that partial settlement agreement. Plaintiffs have furnished the court with a copy of the partial settlement stipulation, which did include the year 1977. Since

defendant concedes that plaintiffs are entitled to a deduction for 1978 and 1979, the court has trouble understanding how the year 1977 is barred by the statute of limitations. As plaintiffs point out in their reply brief, defendant did audit 1977 and asserted a deficiency. Based on the evidence submitted, the court finds that a deduction for Michigan single business taxes paid in 1977 is not barred by the statute of limitations.

## CARRYOVER CREDITS OF WESTERN KRAFT CORPORATION

Willamette and its affiliated corporations filed income tax returns for 1971 through 1975 on a consolidated basis. *See* ORS 317.360(1) (1973 Replacement Part). The consolidated return combines the income and expenses of affiliated corporations into one report as if for a single corporation producing a single tax liability. Western Kraft Corporation was merged into plaintiffs as of December 31, 1973. Defendant did not begin an audit until 1979. On May 7, 1982, the United States Tax Court decision was entered for the years 1971 through 1973. Also, the Internal Revenue Service audited plaintiffs' 1974 returns. Although the federal audit of the 1974 return was not final, a settlement agreement was reached. Accordingly, defendant's auditor relied on both the United States Tax Court decision and the federal audit in auditing plaintiffs' returns.

The sequence of actions taken by defendant's auditor is important. Defendant's auditor first determined that Willamette and its affiliated corporations should not file on a consolidated basis but should report by the combined reporting method. *See* ORS 314.363 (1983 Replacement Part). Accordingly, the auditor recalculated the income, expenses and taxable income for each of the corporations separately. The auditor then allocated the total taxes paid to each corporation in proportion, based on the ratio that the tax liability of each corporation bore to the total taxes paid. After allocating the taxes, the auditor then made adjustments to the income and expenses of each corporation. One adjustment was to treat the merger, which took place on December 31, 1973, as being effective in 1974. After the adjustments, several of the corporations had overpaid their taxes and some had underpaid. Defendant refused to refund the overpayments because

it was past the time when refunds could be made. *See* ORS 314.415.

Plaintiffs claim that the merger was effective in 1973. If defendant was in error in treating the merger as effective in 1974, it would generate a refund due to plaintiffs for 1973 but create a deficiency for 1974. Plaintiffs claim that the $19,368 overpayment resulting from defendant's allocations and adjustments should be credited to other taxes owing by Willamette and its affiliated corporations. Likewise, plaintiffs assert that treating the merger as effective in 1973 affects the calculation of interest due.

Defendant concedes that the merger was effective in 1973. However, it contends that if adjustments are made on that basis, plaintiffs will receive no benefit because the statute of limitations bars any refund to plaintiffs. Moreover, defendant claims that the statute of limitations prevents plaintiffs from receiving any benefit from the $19,368 overpaid.

■ The court finds the defendant abused its discretion when it allocated the taxes paid before making other audit adjustments. Defendant has no rules or laws specifying the treatment of adjustments or allocations for consolidated returns. In contrast, the federal law depends upon complex and detailed federal regulations. Under those regulations, the taxpayers are allowed an opportunity to elect the treatment and the allocations to be made. Here defendant chose the method which it knew would produce a refund already barred by the statute of limitations. Under the particular circumstances of this case, defendant should have made all of the audit adjustments and then credited the taxes where needed.

## REMAINING ISSUES

The remaining issues concerning (1) calculation of taxes, interest and utilization of credits and offsets; and (2) charitable contribution expenses for 1981 and 1983 should be determinable by the parties as a result of the court's decisions on the other issues in this case.

Plaintiffs, in their brief, again address the issue of the statute of limitations on the 1971-73 notices of deficiency. However, that issue was not raised by plaintiffs' complaint.

By order dated July 30, 1992, the court denied plaintiffs' motion to amend its complaint to raise this issue. Under that order, plaintiffs had the burden of proving the statute of limitations barred defendant's notices of deficiency. Plaintiffs did not carry that burden. Accordingly, no further discussion of this issue is necessary.

Based on the above findings, the court will enter a judgment setting aside defendant's Opinion and Order No. 86-1894. The parties shall resolve the remaining issues and submit their proposed resolution to the court. In accordance with TCR 65, defendant shall then prepare computations and submit them to the court with a copy to plaintiffs. If plaintiffs do not agree with the computations, it shall prepare its own computations and serve them in accordance with the rule.

Costs to neither party.