SIMPSON TIMBER COMPANY
*v.*
DEPARTMENT OF REVENUE
(TC 3651)

Marc K. Sellers, Schwabe, Williamson & Wyatt, Portland, represented plaintiff.

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered June 29, 1995.

**CARL N. BYERS, Judge.**

Plaintiff, Simpson Timber Company (Simpson) appeals from Department of Revenue's (department) Opinion and Order No. 92-5902, which held that "delay compensation" received from the federal government in connection with a taking of property was business income. The parties have stipulated the relevant facts and submitted cross motions for summary judgment.

## FACTS

Simpson is a Washington corporation which grows and harvests timber, and manufactures forest products. Prior to 1978, Simpson owned tracts of land containing standing redwood timber in California. Simpson used this property in business operations which were unitary with its Oregon business operations from 1978 through 1988.

On March 27, 1978, pursuant to the Redwood National Park Expansion Act, the United States federal government took 48,000 acres of private timberland in Del Norte and Humboldt counties in California for the expansion of Redwood National Park. The government took 7,654 acres from Simpson, entitling Simpson to recover "just compensation" (fair market value) as of March 27, 1978. Other than this taking, Simpson has never disposed of any timberland or unharvested timber. Prior to the taking, Simpson had included the property in the property factor of the apportionment formula on its Oregon income tax returns.

On April 17, 1978, Simpson initiated suit in the United States District Court for the Northern District of California to recover just compensation for the property taken. In 1988 the federal government paid Simpson $111,130,815, which included $79,160,218 for delay compensation.

For federal income tax purposes, Simpson reported the delay compensation as interest, taxable as ordinary income. Simpson reported the delay compensation on its Oregon income tax returns as nonbusiness income, wholly allocable to the state of Washington, its commercial domicile. Simpson deferred the gain portion of the just compensation

on its federal and Oregon income tax returns as a result of its reinvestment of the just compensation in timber and timberlands.

Forty-nine million dollars of the delay compensation amount was distributed in 1990 to Simpson's shareholders as a dividend. Prior to reinvestment of the just compensation in timber and timberlands and the distribution of the delay compensation, these amounts were commingled and managed by the same personnel within Simpson's organization.

## ISSUE

The parties have stipulated that the legal issue to be decided is whether the delay compensation is "business" or "nonbusiness" income. The tax year at issue is 1988.

## ANALYSIS

ORS 314.610[1] provides the relevant definitions. Business income is:

"[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." ORS 314.610(1).

Nonbusiness income is "all income other than business income." ORS 314.610(5).

■ If the delay compensation is business income, it is not allocable to the state from which the income arises, but must be apportioned by formula. ORS 314.615.

The key to the dispute in this case is the characterization of the intangible giving rise to the delay compensation. The source of the delay compensation was Simpson's intangible right to receive just compensation. That right arose because the government took Simpson's property, property which had been part of the unitary business.

---

[1] All references to the Oregon Revised Statutes are to the 1987 Replacement Part.

■    The basis for Oregon taxing gain realized on property outside its borders is the unitary concept. That is, where a substantial mutual interdependence results in a flow of value, the constitution allows the concept of a single or unitary business. *Container Corp. of Am. v. Franchise Tax Bd.*, 463 US 159, 103 S Ct 2933, 77 L Ed 2d 545 (1983). The timber and land in California contributed to the income earned by Simpson's entire unitary business. Oregon is entitled to have gains from the disposition of such property included in the unitary income because of the relationship between the use of that property in the business and Simpson's activities in Oregon. *Allied-Signal v. Director, Tax Div.*, 504 US 768, 112 S Ct 2251, 119 L Ed 2d 533 (1992).

■    The principles of UDITPA are necessarily related to the constitutional principles mentioned above. The trade or business income of an interstate business is apportioned by formula to avoid taxing value outside of a state's jurisdiction. The purpose of distinguishing between business and non-business income is to delineate the boundaries of the unitary business operations. Gain realized on the disposition of property which was an integral part of a unitary business is business income. *Tucker-Ottmar Farms v. Dept. of Rev.*, 4 OTR 179 (1970).

There is no question the property taken by the government was an integral part of Simpson's unitary business. It had been included in the property factor of the apportionment formula and was the type of property Simpson used in its business. Thus, any gain realized upon the disposition of the property constitutes business income.

■    The statutes and administrative rules recognize that an owner can change the character of an asset. Property which was once an integral part of a unitary business may be removed and changed to an investment or nonoperational asset. In this case, the timberland was involuntarily removed from Simpson's unitary business and replaced with an intangible right to just compensation. The involuntary nature of the transaction prevents the court from determining whether the disposition of the property or the acquisition of the intangible was for a business purpose. Therefore, the character of the intangible must be determined by Simpson's

treatment of the just compensation received from the intangible. Simpson reinvested the proceeds in the unitary business, confirming that the character of the asset had not been changed.

■■     Inasmuch as the delay compensation flows from the right to just compensation, the character of the delay compensation must also be viewed as business income. Regardless of how the delay compensation was calculated, it was "compensation for the use or forbearance of another's money." *Portland Gen. Elect. Co. v. Dept. of Rev.*, 7 OTR 444, 445 (1979). Accordingly, the delay compensation was interest income. OAR 150-314.610(1)-(B)(3), defines interest income as:

> "[B]usiness income where the intangible with respect to which the interest was received arises out of or was created in the regular course of the taxpayer's trade or business operations or where the purpose for acquiring and holding the intangible is related to or incidental to such trade or business operations."

In this case, the acquisition and holding of the intangible was incidental to the unitary business operations of Simpson. Although the disposition of the property was involuntary, the delay compensation came from the disposition of a business asset. Interest realized on the involuntary disposition of the property was business income as an incidental outcome of the method of the transaction.

Accordingly, the delay compensation was business income, and must be apportioned by formula according to ORS 314.615. Now, therefore,

IT IS HEREBY ORDERED that department's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Simpson's Motion for Summary Judgment is denied. Costs to neither party.