Argued and submitted Mach 4, 1996, judgment of the Tax Court affirmed
January 29, 1998

# SIMPSON TIMBER COMPANY,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*

## (OTC 3651; SC S42599)

953 P2d 366

Marc K. Sellers, of Schwabe, Williamson & Wyatt, Portland, argued the cause for appellant. With him on the briefs was Mildred J. Carmack.

James C. Wallace, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Theodore R. Kulongoski, Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

FADELEY, J.

Durham, J., filed a concurring opinion.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

**FADELEY, J.**

Taxpayer is a corporation that engages in the lumber business in many states, including Oregon, Washington, and California. It operates as a single, unitary business.

Under the provisions of ORS 314.605 to 314.670, a fractional portion of taxpayer's "business income" is taxable in each of the states in which taxpayer conducts its unitary business. ORS 314.610(1) defines "business income" as:

> "[I]ncome arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Nonbusiness income is "all income other than business income." ORS 314.610(5).[1] Nonbusiness income is taxable only in the state where it arises.

In 1978, the federal government condemned 7,654 acres of taxpayer's timbered property in California. Taxpayer received just compensation for that condemnation in 1988, the tax year at issue in this case.

Taxpayer received $49,846,000 in just compensation as the fair market value of the assets taken. Of that total, 91.9 percent ($45,840,000) was paid for the standing timber. The balance $4,006,000 was paid for the underlying land. *Report of Commissioners Pursuant to Instruction 503*, Ct No C-78-0868 (No D CA January 26, 1987). However, because of the 10-year delay in paying just compensation, taxpayer also received $79,160,218 as separate compensation for that delay. The amount of that "delay compensation" was based on an assumed investment return on the $49 million during the years that it was owed but not yet paid.

Taxpayer and the Oregon Department of Revenue (department) stipulated in the Tax Court that the legal issue to be decided in this case is

---

[1] All references to the Oregon Revised Statutes are to the 1987 replacement part, because those statutes apply to the tax year in controversy.

"whether the Delay Compensation is 'business' or 'non-business' income, under ORS 314.610(1) and (5) and other Oregon law."

The parties also stipulated to a number of facts: The nature of taxpayer's business is "the general business of growing and harvesting of timber and the manufacture of forest products." Taxpayer sold the products of the timber grown and harvested in its business but never sold the underlying land. Before the condemnation, taxpayer had reported the value of the California timberland as real property of its unitary business for the purpose of determining the portion or fraction of taxpayer's annual income that was taxable in Oregon.[2] For accounting purposes, taxpayer classified the delay compensation as an extraordinary item received and held it as surplus. Taxpayer reported that separate sum on its federal income tax return as "interest." Taxpayer distributed $49 million of the $79,160,218 to its shareholders as a "dividend." None of the delay compensation was reinvested in timberland anywhere.

The Tax Court ruled that the delay compensation was "interest income" and that all such interest income is regular business income.[3] *Simpson Timber Company v. Dept. of Rev.*, 13 OTR 315, 319 (1995). The Tax Court granted the

---

[2] ORS 314.650 provides the formula for apportionment of business income of a multistate unitary enterprise, stating that "[a]ll business income shall be apportioned to this state by multiplying the income by a fraction" that accounts for the factors of relative value of taxpayer's property, payroll, and sales within this state, compared with the value of those factors attributable to its business operations in other states.

[3] The Tax Court relied on OAR 150-314.610(1)-(B)(3), which classifies interest income as business income:

"[W]here the *intangible* with respect to which the interest was received arises out of or *was created in the regular course* of the taxpayer's trade or business operations *or* where *the purpose for* acquiring and *holding the intangible is* related to or *incidental to* such trade or *business* operations." (Emphasis added.)

*See Sperry & Hutchinson v. Dept. of Rev.*, 270 Or 329, 527 P2d 729 (1974) (income that a corporation received from long-term investments *held* not business income "because neither the capital invested nor the income derived therefrom are a part of the trading stamp business" and that income surplus that was temporarily placed in short-term investments during transitions among long-term investments was not business income; but income received from short-term investment of operating capital used to keep stamp business liquid *held* business income proportionally taxable by Oregon).

department's motion for summary judgment to tax the entire amount of delay compensation. *Ibid.* Taxpayer appeals.

■    To consider whether the delay compensation is business income of taxpayer's unitary business, we examine the statute defining "business income," ORS 314.610. We seek to determine legislative intent initially by a review of the statutory text and context. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993). In this step we apply the statutory command that we neither omit anything from, nor add anything to, the words of a statute. *Id.* at 611; ORS 174.010.

The first sentence of ORS 314.610(1) defines "business income." It is composed of two clauses. The first clause requires that, to be "business income," the income must be that "arising from" "transactions" and "activity" in the "regular course of taxpayer's trade or business." The second clause of the "business income" definition expressly includes income from "property," which may be either "tangible" or "intangible."

Whether income from such tangibles or intangibles is "business income" is governed by a conditional phrase that is introduced by the word "if." Income from tangible and intangible property is included in "business income" "if" the "acquisition," "management," "use," and "disposition" of the property are integral parts of taxpayer's regular business operations.

As the parties stipulated, taxpayer is in the business of "growing and harvesting of timber and the manufacture of forest products." Although a forest products business could acquire standing timber without acquiring the underlying land, taxpayer here did acquire that land and did so in support of "growing" a supply of the raw material that it needed and intended to use in the regular course of its forest products business. It acquired, managed, and used the land and timber to that regular business end, a fact about which there is no dispute. The only dispute occurs as to "disposition," the last word in the second clause.

■ Taxpayer argues that the foregoing definition of business income does not apply to the condemnation of its timber and land, because condemnation does not represent a *voluntary* disposition and, therefore, cannot be a disposition constituting an integral part of taxpayer's *regular business operations*. For the reasons that follow, we disagree with the premise that the statutory definition covers only *voluntary* dispositions.

■ All business is conducted with the knowledge that events beyond the control of those operating the business may affect the plans of the business operators. Governmental intervention through exercise of eminent domain is among the possible events that are beyond the control of those operating a business. Condemnation is the equivalent of a forced sale of the property taken. It uses an assumed voluntary sale of the same property as a measure of price.[4] Whether the conditions and terms of that sale were set by law, including constitutional law, does not alter that concept. Nor does it alter the additional fact that the compensation paid by the government for the timberland was compensation paid for property that the taxpayer intended to use to produce "business income."

The governmental taking by condemnation converted taxpayer's ownership rights in the timberland to an intangible property right, namely the right to receive just compensation in money. The sum at issue in this case was paid on account of the delay in paying the just compensation due for that "property."

■ Nothing in the statutory definition of "business income" suggests that a disposition that is involuntary is any

---

[4] Condemnation is the "[p]rocess of taking private property for public use through the power of eminent domain." *Black's Law Dictionary*, 292 (6th ed 1990). The condemnor must compensate a land owner for the value of the land, including improvements on it. *State ex rel Dept. of Trans. v. Glenn*, 288 Or 17, 20, 602 P2d 253 (1979). The measure of that value is generally market value of what was taken. *State Highway Com. v. Stumbo et al*, 222 Or 62, 352 P2d 478 (1960). It has been described by this court as "fair cash market value," *Highway Commission v. Holt et ux*, 209 Or 697, 699, 308 P2d 181 (1957), and is defined as "the amount which the land would bring if it were offered for sale by one who desired but was not obliged to sell and was bought by one who was willing but not obliged to buy." *Pape et al v. Linn County*, 135 Or 430, 437, 296 P 65 (1931).

less a disposition, or that the income therefrom is any less "business income."[5] We cannot read into the statutory definition of "business income" the additional word "voluntary" before the word "disposition." We conclude that the just compensation paid as a condemnation award may create a recognizable, taxable business gain identical to that created by a voluntary sale of the same assets for the same amount.[6]

■    Taxpayer additionally argues that, even if the just compensation award is considered "business income," the delay compensation should not be considered as income of the same character as the just compensation. That is so, taxpayer argues, because:

> "Simpson does not, as an integral part of its business operations, acquire * * * and dispose of intangible rights to damages for delay in receiving compensation for takings of its timberlands."

That argument is wide of the mark, because it questions only whether specifically described types of intangibles are disposed of by a taxpayer in the regular course of its business. The argument rests on an assumed factual premise that is not present in this case. There was no "disposition" of the delay compensation as taxpayer's argument would require. Taxpayer and its shareholders retained it. The ultimate source of the income here was the standing timber and the land on which it was growing, assets admittedly acquired and used in taxpayer's business as integral parts of it. The disposition was of those business assets.

We conclude that, when the timber and land on which it was growing were disposed of by an involuntary sale

---

[5] Moreover, ORS 314.290, a statute relating to conversion of real property, supports the proposition that no meaningful distinction in the character of an item of income arises merely because that income was produced by an "involuntary" rather than a "voluntary" conversion of real property either to money or to a different property. ORS 314.290 affirmatively states that "involuntary" and "voluntary" conversions are, for purposes of that statute, to be treated in the same manner. When the 1965 legislature enacted ORS 314.610 in Oregon Laws 1965, chapter 152, section 2, ORS 314.290 was already in place, having been enacted as Oregon Laws 1957, chapter 102, section 2.

[6] *See also District of Columbia v. Pierce Associates,* 462 A2d 1129 (DC App 1983) (insurance proceeds that taxpayer received for flood damage to its manufacturing facility constitute "business income"; the extraordinary nature or the infrequency of the transactions is irrelevant).

to the government through condemnation, that disposition was as much an integral part of the taxpayer's regular business operations for purposes of the statutory definition as were the initial acquisition, management, and use of the timberland. The additional amount paid because of delay in paying the fair market price is but added income from that regular business disposition. ORS 314.610(1) defines that income as unitary "business income."

Taxpayer also relies on two decisions of the United States Supreme Court relating to multistate taxation to support its claim that the delay compensation should be classified as nonbusiness income. Those two cases are *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 US 307, 102 S Ct 3103, 73 L Ed 2d 787, *reh den* 459 US 961 (1982), and *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 US 354, 102 S Ct 3128, 73 L Ed 2d 819, *reh den* 459 US 961 (1982).

The rule of those cases revolves around the presence or absence of a unitary business involving both out-of-state operations and in-state operations: Was there a unitary business that produced the income stream that a state sought to tax? In each of those cases the taxpayer received money because of its ownership of stock in separate, discrete corporations not operating in the taxing state. In each case the Supreme Court found that the out-of-state income could not be taxed, because the source of the income was *not* part of the taxpayer's unitary business, *i.e.*, because no unitary business was present as to that income.

That is not our case. The presence of a single, unitary business is not contested, nor do the receipts at issue here arise from an outside source. Taxpayer's reliance on those cases is misplaced.[7]

The judgment of the Tax Court is affirmed.

---

[7] Taxpayer also cites cases from some other states to support its assertion that the income from this condemnation should be considered nonbusiness income. Those cases do not involve either condemnation of property or a partial disposition of assets. Instead, they involve total liquidation of a former business entity, complete liquidation of a division of a business entity, or sale of an asset never utilized by the unitary business in the regular course of its business. Those cases are not factually similar to the case before us and do not announce principles that support taxpayer's argument here.

**DURHAM, J.,** concurring.

I concur in the majority's conclusion that the Tax Court correctly determined that the "delay compensation" that taxpayer received is business income under ORS 314.610(1). I write separately because the majority's rationale does not respond completely to taxpayer's arguments and misses taxpayer's points in other important respects.

This case turns on the definition of "business income" in ORS 314.610(1), which provides:

> " 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Unless the delay compensation that taxpayer received is business income within that definition, taxpayer is under no obligation to apportion that income to Oregon according to the formula specified by ORS 314.605 to 314.670.

The department argues that the court need not concern itself with the complexities of the statutory definition, because it has adopted a rule that also defines business income and, under that definition, delay compensation is business income.

The rule, OAR 150-314.610(1),[1] purports to expand the meaning of "business income" beyond the scope of the

---

[1] OAR 150-314.610(1)-(A) provides, in part:

"ORS 314.610(1) defines 'business income' as * * *. For purposes of administration of ORS 314.605 to 314.670, the income of the taxpayer is business income unless clearly classifiable as nonbusiness income under ORS 314.605 to 314.670 and the rules thereunder."

OAR 150-314.610(1)-(B) provides, in part:

"The classification of income by the labels occasionally used, such as manufacturing income, compensation for services, sales income, interest, dividends, rents, royalties, capital gains, operating income, nonoperating income, etc., is of no aid in determining whether income is business or nonbusiness income. Income of any type or class and from any source is business income if it arises from transactions and activity occurring in the regular course of a trade or business. * * * In general, all transactions and activities of the taxpayer which are dependent upon or contribute to the operations of the taxpayer's economic enterprise as a whole constitute the taxpayer's trade or

statutory definition. For example, the statute requires that business activity regarding property be an integral part of the taxpayer's regular trade or business. By contrast, the rule declares that all transactions and activities that depend on or contribute to the taxpayer's economic enterprise as a whole constitute an "integral" part of a trade or business. The rule also provides that all interest income is business income if the underlying intangible property arises out of, or was created in, the regular course of taxpayer's business, or if the acquisition of the intangible "is related to or incidental to such trade or business operations."

In my view, the rule pays insufficient heed to the requirement in the statutory definition that the listed activities regarding property factually must constitute integral parts of the taxpayer's regular business. The department's effort to define virtually every transaction involving property as an "integral part" of every taxpayer's business demonstrates legal ingenuity without legal accuracy. The department's rule does not obviate the necessity of interpreting the statutory definition.

ORS 314.610(1) defines business income as income derived from two sources. The first source is "income arising from transactions and activity in the regular course of the taxpayer's trade or business." The department describes that portion of the definition as a "transactional" test.

---

business and will be transactions and activity arising in the regular course of, and will constitute integral parts of, a trade or business. The following are rules and examples for determining whether particular income is business or nonbusiness income. * * *

"* * * * *

"(2) *Gains or losses from sale⁻ of assets.* Gain or loss from the sale, exchange, or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used in the taxpayer's trade or business. However, if such property was utilized for the production of nonbusiness income or otherwise was removed from the property factor before its sale, exchange or other disposition, the gain or loss will constitute nonbusiness income. * * *

"* * * * *

"(3) *Interest.* Interest income is business income where the intangible with respect to which the interest was received arises out of or was created in the regular course of the taxpayer's trade or business operations or where the purpose for acquiring and holding the intangible is related to or incidental to such trade or business operations."

The second source is

"income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

The department describes that portion of the definition as a "functional" test. I will adopt the department's nomenclature in referring to the two elements of statutory definition.

The parties disagree about whether and how the two tests operate together. Their dispute centers on the meaning of the phrase "and includes" in the statutory definition. Taxpayer contends that, in order to qualify as business income, *all* forms of income must satisfy the transactional test and that income from property *also* must satisfy the functional test. The department contends that each part of the statutory definition identifies a kind of business income. According to that view, income that satisfies *either* the transactional *or* the functional test constitutes business income. The department contends that delay compensation satisfies *both* the transactional and functional tests.

Taxpayer asserts that the transactional test is not satisfied here. According to taxpayer, the condemnation of the property was an extraordinary disposition, not a transaction or activity in the regular course of its trade or business.

Taxpayer also offers a series of propositions to demonstrate that the functional test is not satisfied. For example, taxpayer contends that the functional test requires three types of activities regarding property, *i.e.*, (1) acquisition, (2) management, use or rental, and (3) disposition and that, because the statute joins that list of activities with the conjunction "and," all three types must constitute integral parts of taxpayer's regular trade or business operations. Taxpayer argues that the court must apply the functional test to the very form of income that taxpayer received, *i.e.*, delay compensation, and should resist the department's attempt to analogize delay compensation to something that it is not, such as interest on an account receivable. Finally, taxpayer

argues that the functional test applies to income when taxpayer receives it and that taxpayer's later use of the income has no bearing on a decision whether income from property constitutes business income. I agree with each of taxpayer's propositions regarding proper application of the functional test. However, for the reasons discussed below, I conclude that taxpayer's delay compensation is business income.

The difficulty with taxpayer's position is that the condemnation that occurred here satisfies both the transactional and functional tests. Taxpayer's business is the growth and harvesting of timber and the manufacture of wood products. The condemnation forced taxpayer to sell property that consisted of land and trees. The trees represented almost all the value of the condemned property (more than 91%). I am unable to see how the fact that the condemned property included a small real property component alters the essential character of the transaction as a forced sale of taxpayer's valuable standing timber. The involuntary nature of the sale and the absence of prior sales of real property by taxpayer also play no role in the analysis under the transactional test. Taxpayer's receipt of full value for its timber is, in the terms of the transactional test, a transaction and activity in the regular course of taxpayer's business.

The government paid delay compensation here to make taxpayer whole as a result of its delay in paying just compensation for the condemned property. Delay compensation represents part of the government's payment of full value to taxpayer for its property. Such compensation is an essential component of the judgment in the condemnation proceeding and, thus, constitutes income that arises from activity that satisfies the transactional test.

The functional test addresses income from property. It treats income from property as business income only if each of the three listed forms of activity regarding the property are "integral parts" of taxpayer's regular trade or business operations. Taxpayer argues that, because it never has sold the land on which it grows trees, the disposition of land plays no part, let alone an integral part, in taxpayer's business.

What was said above, in connection with the discussion of the transactional test, defeats taxpayer's argument. The condemnation judgment attributed almost all the value of the condemned property to the trees. The processes of acquiring, managing, and disposing of commercial timber for full value are integral parts of taxpayer's business operations. As noted, delay compensation was a component of the government's obligation to pay full value for taxpayer's property and, therefore, was income from property within the meaning of the functional test.

Taxpayer relies on *Sperry & Hutchison v. Dept. of Rev.*, 270 Or 329, 331-32, 527 P2d 729 (1974), in which this court held that the taxpayer's income from long-term investments was not apportionable to Oregon "because neither the capital invested nor the income derived therefrom are a part of the trading stamp business conducted in this state." That case is distinguishable. Both the capital invested in taxpayer's tree-growing operation and the income derived from that operation, in part in the form of delay compensation, are integral parts of taxpayer's business operations.

Because the delay compensation received in this case was business income under both the transactional and functional tests, I need not decide here whether, in order to be business income, the income need satisfy only one of the tests or must satisfy both the transactional and functional tests.

For the reasons expressed above, the Tax Court correctly decided that the delay compensation received that taxpayer was business income. Therefore, I concur in the result reached by the majority.