# IN THE OREGON TAX COURT
## MAGISTRATE DIVISION

### TERRACE TOWER U.S.A., INC.,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant.*
(TC-MD 970100)

Robert Mann, Assistant Secretary, Terrace Tower U.S.A., Inc., filed the motion for Plaintiff.

James Wallace, Assistant Attorney General, Department of Justice, Salem, filed the motion for Defendant.

Decision for Plaintiff rendered March 16, 1999.

Decision on *de novo* review at 15 OTR 168 (2000).

**JILL A. TANNER, Magistrate.**

Plaintiff appeals from Defendant's determination that the capital gain realized from Plaintiff's redemption of capital units of the Encino Split Unit Trust was business income. The issue has been submitted to the court on Cross Motions for Summary Judgment.

## FACTS

The parties have stipulated to the following facts. Plaintiff, Terrace Tower U.S.A., Inc. (TT USA), is a Delaware corporation, which as of the end of its fiscal year, June 30, 1994, had not done business in Oregon. TT USA's wholly owned domestic subsidiary, Terrace Tower U.S.A. - Portland, Inc. (TT USA PDX), began its management of a commercial building in Portland, Oregon, with the purchase of a Portland building on August 20, 1993. TT USA and TT USA PDX are in the business of managing commercial real estate properties. For the fiscal year ending June 30, 1994, TT USA and TT USA PDX were unitary for purposes of filing a corporate excise return in Oregon.

At issue is TT USA's redemption of capital units of the Encino Split Unit Trust (Trust) that were reported by Plaintiff as nonbusiness income and not apportionable to Oregon. The Trust was created in August 1992, primarily for Australian tax purposes. The owner of TT USA is an Australian company, J.S. Securities Pty Ltd (J.S.). J.S. became the **income** unitholder of the Trust and Plaintiff became the **capital** unitholder of the Trust. Under the terms of the Trust, ordinary income was allocated to J.S. and capital gains and losses, including gains and losses arising from currency fluctuations, were allocated to TT USA.

According to the Deed of Settlement of Trust, the Trust could "invest all or any part of such funds in trust assets of a kind in which a trustee may invest under the 'prudent man' standard applicable to trusts governed by California law." In summary, the assets of the Trust were invested in stocks, bonds, and gold. The Trust assets were received as capital contributions from the unitholders or acquired. The assets of the Trust were maintained until such time as the unitholders redeemed their units.

In July and August 1993, TT USA redeemed capital units in the Trust. TT USA transferred the funds (cash) received from the redemption to TT USA PDX for the purchase of a commercial building in Portland. TT USA reported a net capital gain of $545,128 from the redemption on its federal income tax return for the fiscal tax year ending June 30, 1994. On TT USA's Oregon corporate excise return, which included its wholly owned subsidiary TT USA PDX, it reported the capital gain as nonbusiness income and not apportionable to Oregon. TT USA included all other income, expenses, gains, and losses realized by TT USA and TT USA PDX during the fiscal year in its determination of income apportionable to Oregon.

At the conclusion of its audit, Defendant determined the net capital gain of $545,128 to be business income and apportionable to Oregon. Defendant issued its Notice of Deficiency dated June 17, 1996, to Plaintiff. On September 2, 1997, Plaintiff filed its Complaint with the court appealing Defendant's Notice.

## ISSUE

Is Plaintiff's capital gain arising from the redemption of units in the Trust apportionable to Oregon?

## ANALYSIS

Corporations doing business in Oregon are subject to its corporate excise tax. ORS 317.018(3).[1] Oregon's corporate excise tax is a tax on a taxpayer that is imposed "for the privilege of carrying on or doing business in this state" and is "measured by or according to net income." ORS 317.010(5). The legislature has made the Oregon corporate excise tax law identical to the provisions of the federal Internal Revenue Code. ORS 317.018(1). For a group of affiliated corporations such as TT USA and TT USA PDX, the starting point is consolidated federal taxable income. ORS 317.715(1). Generally, the federal taxable income after additions, subtractions, adjustments, and modifications is apportioned to Oregon by a

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 1995 Replacement Part.

formula that includes three factors: property, payroll, and sales. ORS 317.010(10); ORS 314.650(2).

Plaintiff believes that the inclusion of the redemption proceeds in its Oregon taxable income is incorrect. Plaintiff argues that the capital gain from the redemption of the Trust units occurred prior to the date TT USA PDX began doing business in Oregon and should not be subject to Oregon's corporate excise tax.

"Where the taxpayer's Oregon business activities are a part of a unitary business carried on both within and without the state, use of the apportionment method is mandatory to determine the portion of the unitary net business income attributable to Oregon." OAR 150-314.615(D). Plaintiff stipulated that TT USA and TT USA PDX carried on a unitary business in Oregon for the fiscal tax year. It is through TT USA's ownership of TT USA PDX, which did business within the state, that Plaintiff is subject to Oregon corporate excise tax. Defendant correctly concludes that the statutory apportionment formula modifies taxable income to approximate the presence and activity occurring only within the state during the reporting period. ORS 314.655, ORS 314.660, and ORS 314.665. The factors, payroll, property, and sales, from which the apportionment formula is derived, are linked to a taxpayer's activity within the state during its fiscal year. There is no provision in Oregon law to exclude the capital gain from the redemption of the Trust units from Plaintiff's Oregon taxable income solely because the redemption occurred prior to the date TT USA PDX began doing business in Oregon.

"Under the provisions of ORS 314.605 to ORS 314.670, a fractional portion of taxpayer's 'business income' is taxable in each of the states in which taxpayer conducts its unitary business." *Simpson Timber Company v. Dept. of Rev.*, 326 Or 370, 372; 953 P2d 366 (1998). Business income is defined in ORS 314.610(1) as follows:

> "* * * Income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if

the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Nonbusiness income is "all income other than business income." ORS 314.610(5). "Nonbusiness income is taxable only in the state where it arises." *Simpson Timber*, 326 Or at 372.

The starting point in analyzing the "business income" issue before the court is the statutory definition of business and nonbusiness income. The leading case on statutory interpretation is *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). The case directs the court to accept the plain meaning of a statute and "that words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* at 611.

■ Business income is defined in the first sentence of ORS 314.610(1). "The first clause requires that, to be 'business income,' the income must be that 'arising from' 'transactions' and 'activity' in the 'regular course of taxpayer's trade or business.'" *Simpson Timber,* 326 Or at 374. Defendant refers to that portion of the definition as the "transactional" test. The second clause of the definition "expressly includes income from 'property,' which may be either 'tangible' or 'intangible.'" *Id.* Business income includes income from tangible and intangible property " 'if' the 'acquisition,' 'management,' 'use,' and 'disposition' of the property are integral parts of taxpayer's regular business operations." *Id.* Defendant refers to that portion of the definition as the "functional" test. The court will use "transactional" and "functional" to refer to the two clauses of the definition.

■ First, the court will discuss the transactional test. Business income must be income from a transaction or activity in the regular course of its trade or business. Plaintiff contends that its regular course of business is the management of commercial real estate properties. In August 1992, as a result of various corporate reorganizations, Plaintiff became a unitholder in a Trust and manager of the Trust's investment portfolio of securities. In summary, Plaintiff's regular course of business was the management of commercial real estate and other investments.

In order to obtain funds to purchase additional commercial real estate properties, Plaintiff redeemed its capital units. Plaintiff realized a capital gain from its redemption. The redemption of the Trust units was not in Plaintiff's regular course of business. Plaintiff's regular course of business was to manage commercial properties and investments. The redemption resulted in Plaintiff reducing its ownership in the Trust that terminated its regular investment management activity. Plaintiff wrote that a portion of the investment portfolio had been maintained for over 10 years and the balance for over one year. Plaintiff's "regular" activity was to manage the investments, not to terminate its management function. The redemption flunks the transactional test and the capital gain is not business income.

■ The second test, functional, requires that three types of activities regarding property, *i.e.*, (1) acquisition, (2) management, use or rental, and (3) disposition, must be an integral part of a taxpayer's regular trade or business operations. *Simpson Timber*, 326 Or at 380. In addition, the functional test applies to the "very form of income that taxpayer received," *i.e.*, in the instant case, cash proceeds from a redemption of Trust units. *Id*. And, the functional test applies to income when a taxpayer receives it and a taxpayer's later use of the income has no bearing on whether the income from property constitutes business income. *Id*. at 381.

Defendant has promulgated an administrative rule, OAR 150-314.610(1)(B), for determining whether particular income is business or nonbusiness income. OAR 150-314.610(1)(B)(2) states:

> "*Gains or losses from sale of assets*. Gain or loss from the sale, exchange, or other disposition of real or tangible or intangible personal property constitutes business income if the *property while owned by the taxpayer was used in the taxpayer's trade or business*. However, if such property was utilized for the production of nonbusiness income or otherwise was removed from the property factor before its sale, exchange or other disposition, the gain or loss will constitute nonbusiness income."

(Emphasis added.)

■      As previously discussed, Plaintiff was a unitholder in a Trust. The "property" that Plaintiff acquired, managed, and disposed of was its capital units in the Trust. The court must determine if Plaintiff's "acquisition," "management," "use," *and* "disposition" of the capital units (property) was an integral part of Plaintiff's regular business operations. The court concludes it was not.

Plaintiff's ownership interest in the Trust was a result of corporate reorganizations. The Trust was not a member of the unitary group. It was a separate legal entity. The Trust assets were not used in the daily operations of Plaintiff's business. It was a long-term investment. The court sees no indication that Plaintiff wanted or needed the proceeds from the redemption to provide day-to-day operating funds. In its analysis, the court need not consider Plaintiff's later use of the cash proceeds from the redemption of the units in its determination of whether the property constitutes business income. Plaintiff's capital gain from the redemption of the capital units had no relationship to the commercial real estate business its subsidiary, TT USA PDX, conducted in Oregon. The capital gain Plaintiff received from the redemption was nonbusiness income.

The court finds additional support for its conclusion in two decisions of the United States Supreme Court. *ASARCO Inc. v. Idaho State Tax Comm'n*, 458 US 307, 102 S Ct 3103, 73 L Ed 2d 787, *reh'g den*, 459 US 961, 103 S Ct 275, 74 L Ed 2d 213 (1982), and *F. W. Woolworth Co. v. Taxation & Revenue Dept.*, 458 US 354, 102 S Ct 3128, 73 L Ed 2d 819, *reh'g den*, 459 US 961, 103 S Ct 274, 74 L Ed 2d 213 (1982). The facts of each of those cases closely parallels the case before the court. "In each of those cases the taxpayer received money because of its ownership of stock in separate, discrete corporations not operating in the taxing state. In each case the Supreme Court found that the out-of-state income could not be taxed, because the source of the income was *not* part of the taxpayer's unitary business, *i.e.*, because no unitary business was present as to that income." *Simpson Timber*, 326 Or at 377. In *ASARCO*, the Supreme Court rejected the argument that "corporate purpose should define unitary business." *ASARCO*, 458 US at 326. "What is required instead is that the capital transaction serve an operational rather than

an investment function." *Container Corp. of America v. Franchise Tax Bd.*, 463 US 159, 180 n 19, 103 S Ct 2933, 77 L Ed 2d 545 (1983). Plaintiff held an ownership interest in a "separate, discrete" Trust that was not operating in Oregon. The strategic decision by Plaintiff to discontinue its investment interest in the Trust in order to redeploy its resources elsewhere was not an operating function. The Trust was not part of Plaintiff's unitary business in Oregon.

Defendant correctly states that the unitary test defined in *ASARCO* and *Woolworth* was reaffirmed by *Allied Signal, Inc. v. Dir., Division of Taxation*, 504 US 768, 112 S Ct 2251, 119 L Ed 2d 533 (1992). In addition, Defendant stated that *Allied Signal* held "that such unity is **not** an essential requirement." (Emphasis in original.) Defendant focuses on the recognition of an operational test whereby the "investment, or ownership of the stock, had to have a function or purpose in the taxpayer's unitary operations." Defendant argues that because Plaintiff admits that the purpose of the Trust was to accumulate funds to purchase additional commercial real estate properties it is part of Plaintiff's unitary business and taxable by Oregon.

Defendant overlooks two important points. First, Plaintiff's ownership interest in the Trust had no "function or purpose" in its business operations. Plaintiff's ownership was a long-term investment acquired through capital contributions from its owner, J.S. Securities. How Plaintiff intended to use the income from the redemption of its investment is irrelevant. There is no indication that Plaintiff's redemption of the capital units served an operational rather than investment purpose. *Allied Signal* stated that an assessment of whether an intangible asset served an operational function must focus "on the objective characteristics of the asset's use and its relation to the taxpayer and its activities within the taxing State." *Allied Signal*, 504 US at 785. The Supreme Court gave two examples of how an intangible might serve an operational function: a short-term investment similar to a bank account or certificate of deposit, or, under its decision in *Corn Products Refining Co. v. Commissioner*, 350 US 46, 50-53, 76 S Ct 20, 100 L Ed 29 (1955), a long-term investment in

commodity futures that ensures a certain supply of a necessary product at a fixed price. *Id.* at 789-90. As previously discussed, there is no indication that Plaintiff treated its investment in the Trust as a repository for working capital similar to a bank account. Nor did Plaintiff hold its investment in the Trust as a hedge against a fluctuating supply of a commodity. Defendant argues that the *Corn Products* rule has "spread to the gain or loss of intangible assets, including stock, which were bought not for investment purposes, but as an incident to the taxpayer's ordinary business." The *Corn Products* doctrine has no application to the facts of this case; the court has concluded that Plaintiff's ownership interest in the Trust was for investment purposes and not "incident to the taxpayer's ordinary business." *Allied Signal,* 504 US at 789-90.

Second, recent state court decisions have held that defining a unitary relationship of operational function based upon the finding of a corporate purpose would destroy the concept that requires nexus between the income and the companies activities within the taxing state. *Hercules Corporation v. Comptroller of the Treasury*, 351 Md 101, 716 A2d 276 (1998) (holding that state may not tax income earned outside its borders, even on a proportional basis, unless there is a rational relationship between the income attributed to the state and the intrastate values of the enterprise); and *Hercules Corporation v. Commissioner of Revenue*, 575 NW2d 111 (1998) (holding the corporation's ownership and sale of a company's stock was not sufficiently linked to the corporation's day-to-day operations to make gain from sale business income to apportion and corporation carried stock on its books for more than four years as investment, not assets). Even though Plaintiff had a corporate purpose to use the Trust funds to purchase commercial real properties, Plaintiff's capital gain from the redemption of units in the Trust had no operational relationship to its Oregon business activities.

Defendant relies on various Oregon tax cases in support of its position that Plaintiff's capital gain is business income. *Sperry & Hutchinson v. Dept. of Rev.*, 270 Or 329, 527 P2d 729 (1974); and *Gilmore Steel Corp v. Dept. of Rev.*, 9 OTR 210 (1982). The court finds support for its decision in

*Sperry* wherein the Oregon Supreme Court held that the taxpayer's income from investments was not apportionable to Oregon "because neither the capital invested nor the income derived therefrom are a part of the trading stamp business conducted in this state." *Sperry*, 270 Or at 331-32. Plaintiff's investment in the Trust was financed through capital contributions from its Australian parent, J.S. The Trust income was not allocated to Plaintiff. Neither Plaintiff's investment in the Trust nor the income derived from the Trust was an integral part of its business operations conducted in Oregon.

In *Gilmore*, the Oregon Tax Court held that interest from investments made with a portion of the proceeds from a common stock offering is business income. As Defendant stated, the parties in *Gilmore* stipulated that the common stock offering was part of an agreement that the proceeds would be used to carry inventory and build another facility. The applicability of *Gilmore* to this case is wide of the mark. As previously stated, the court need not consider Plaintiff's subsequent use of the cash proceeds from the redemption. Plaintiff had no such "agreement" prior to its redemption that the proceeds would be used solely to acquire property in Oregon such that Oregon could reach out and tax Plaintiff.

## CONCLUSION

IT IS THE DECISION OF THE COURT that Plaintiff's capital gain from the redemption of its ownership in the Trust was nonbusiness income and not apportionable to Oregon for the fiscal tax year ending June 30, 1994.

IT IS FURTHER DECIDED that Plaintiff's Motion for Summary Judgment is granted.

IT IS FURTHER DECIDED that Defendant's Motion for Summary Judgment is denied.