Argued and submitted November 10, 1999, judgment of the Tax Court reversed, and case remanded to that court for further proceedings November 17, 2000, petition for reconsideration denied January 30, 2001

# WILLAMETTE INDUSTRIES, INC., & SUBSIDIARIES;
## and Willamette Industries, Inc., transferee of Bend Willamette Corporation, *Appellants,*

*v.*

# DEPARTMENT OF REVENUE, *Respondent.*

## (OTC 3050; SC S46137)

15 P3d 18

Philip N. Jones, Duffy, Kekel, Jones & Bernard, LLP, Portland, argued the cause for appellant. With him on the briefs was Peter J. Duffy, Portland.

Marilyn J. Harbur, Assistant Attorney General, Salem, argued the cause for respondent. With her on the briefs was Hardy Myers, Attorney General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Leeson, and Riggs, Justices.**

DURHAM, J.

---

** Kulongoski, J., did not participate in the consideration or decision of this case.

**DURHAM, J.**

Taxpayers appeal a judgment entered by the Oregon Tax Court after it concluded that taxpayers' royalty income attributable to out-of-state mineral rights was "business income." We have jurisdiction under ORS 305.445. Because taxpayers' complaint was filed in 1990, we review *de novo*, ORS 305.445 (1989), and taxpayers must prove their claims by a preponderance of the evidence. ORS 305.427; *Delta Air Lines, Inc. v. Dept. of Rev.*, 328 Or 596, 603, 984 P2d 836 (1999). For the following reasons, we reverse the decision of the Tax Court.

Taxpayers constitute a forest products business that grows timber and uses that timber to make lumber, plywood, particle board, fiberboard, cardboard, and paper. As the Tax Court summarized:

> "The parties stipulate that during 1971 through 1983, Willamette, and two of its subsidiaries, received net oil and gas royalty income from unrelated companies drilling on portions of their timberlands in Louisiana, Arkansas and Oregon. The stipulation specifies the amount of income received by each company during each year in each state. Willamette allocated the oil and gas royalties from the timberland to the states where the timberland was located. Most of the oil and gas royalty income was allocated to either Louisiana or Arkansas."

*Willamette Industries, Inc. v. Dept. of Rev.*, 12 OTR 291, 292 (1992).

The Department of Revenue (department) determined that taxpayers' receipt of royalty income from the unrelated companies was part of their regular course of business activities and, therefore, was taxable as business income in Oregon. Relying principally on the department's rules, the Tax Court agreed that the out-of-state royalty income was business income and entered a judgment in favor of the department. *Id.* at 292-95. Taxpayers appealed.

Taxpayers assert that the Tax Court's ruling is erroneous for two reasons. First, taxpayers argue that the administrative rule that the Tax Court used in its analysis expands

the meaning of business income beyond the scope of the statutory definition. Second, taxpayers argue that their out-of-state mineral rights royalties fall outside Oregon's statutory definition of business income.ORS 314.815 provides that the department may make such rules and regulations, not inconsistent with legislative enactments, as it considers "necessary to enforce income tax laws." In this instance, the pertinent legislative enactment, ORS 314.610(1), defines "business income" as follows:

> " 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute *integral* parts of the taxpayer's regular trade or business operations."

(Emphasis added.) That statute is part of the Uniform Division of Income for Tax Purposes Act (UDITPA), ORS 314.605 to ORS 314.675, which is a uniform statute that several states, including Oregon, have adopted. The department promulgated OAR 150-314.610(1)(B) to explain its interpretation of ORS 314.610(1). OAR 150-314.610(1)(B) provides in part:

> "Income of any type or class and from any source is business income if it arises from transactions and activity occurring in the regular course of a trade or business. Accordingly, the critical element in determining whether income is 'business income' or 'nonbusiness income' is the identification of the transactions and activity which are the elements of a particular trade or business. In general, all transactions and activities of the taxpayer which are dependent upon or contribute to the operations of the taxpayer's economic enterprise as a whole constitute the taxpayer's trade or business and will be transactions and activity arising in the regular course of, and will constitute integral parts of, a trade or business. The following are rules and examples for determining whether particular income is business or nonbusiness income. * * *

> "(1)   Rents and royalties from real and tangible property. Rental income from real and tangible property is business income if the property with respect to which the rental

income was received is used in the taxpayer's trade or business or is *incidental* thereto and therefore is includable in the property factor under OAR 150-314.655(1)-(A)."

(Emphasis added.) Taxpayers contend that that rule is overly broad.

ORS 314.610(1) provides that income from property is taxable if the acquisition, management, use or rental, and disposition of the property constitute *integral* parts of the taxpayer's regular trade or business operations. The statute does not define the term "integral." The dictionary definition of "integral" is as follows:

> "* * * **1a**: of, relating to, or serving to form a whole: essential to completeness: * * * **c**: formed as a unit with another part (as the main part):—often used *with*; * * * **2**: composed of constituent parts making a whole * * *."

*Webster's Third New Int'l Dictionary*, 1173 (unabridged ed 1993) (emphasis in original). OAR 150-314.610(1)(B)(1), by contrast, provides that royalties are business income if the property, with respect to which the income is received, is used in the taxpayer's trade or business or if it is *incidental* thereto. The definition of "incidental" is:

> "* * * **1**: subordinate, nonessential, or attendant in position or significance: as **a**: occurring merely by chance or without intention or calculation: occurring as a minor concomitant * * * **b**: being likely to ensue as a chance or minor consequence * * * **c**: lacking effect, force, or consequence: not receiving much consideration or calculation: * * * **d**: presented purposefully but as though without consideration or intention * * * **2**: met or encountered casually or by a accident: CHANCE[.]"

*Webster's Third New Int'l Dictionary* at 1142 (emphasis in original).

We cannot reconcile the statutory standard, "integral," with the disparate standard in the rule, "incidental." Under the rule, practically all the property of a taxpayer might qualify as a source of business income, because all the property of a business helps produce income for the business at least to an incidental degree. However, the statute requires the property from which the taxpayer derives

income to constitute an integral part of the taxpayer's business. The department's rule exceeds the scope of the statutory definition of "business income."

The rule is an improper exercise of agency rule-making authority. We therefore conclude that OAR 150-314.610(1)(B)(1) is invalid to the extent that it treats as "business income" the income from property that merely is incidental to a taxpayer's trade or business. We next examine ORS 314.610(1) to determine whether taxpayers' royalty income is business income under that statute.

■　　In *Simpson Timber Company v. Dept. of Rev.*, 326 Or 370, 374, 953 P2d 366 (1998), the court recognized that ORS 314.610(1) defines business income as income derived from two sources. The first source is "income arising from transactions and activity in the regular course of the taxpayer's trade or business." We will refer to that portion of the definition as a "transactional" test.

The second source is "income from tangible and intangible property if the acquisition, the management, use or rental, and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." We will refer to that portion of the definition as a "functional" test.

■■　　The transactional test posits that business income arises from transactions in the regular course of the taxpayer's business. By contrast, the functional test dictates that acquisition, management, use or rental, *and* disposition of property must constitute integral parts of regular business operations. Under the functional test, income includes, for example, royalty income if the acquisition, management, use or rental, and disposition of the property that produces the royalty is also an integral part of the taxpayer's regular business operations.

■　　Taxpayers may prevail only if we conclude that the royalty income in question satisfies neither the transactional test nor the functional test. *See Simpson Timber*, 326 Or at 374-77 (applying solely the functional test in affirming Tax Court's determination that "delay compensation" was business income); *Sperry & Hutchinson v. Dept. of Rev.*, 270 Or

329, 331-33, 527 P2d 729 (1974) (applying solely the transactional test).[1]

In *Sperry & Hutchinson*, the taxpayer (S&H) was in the trading stamp business (*i.e.*, "green stamps"). "S & H's primary business and the only business conducted in Oregon [was] the sale of a trading stamp promotional service to retailers." 270 Or at 331. This court applied only the transactional test and determined that the issue was whether S&H's investment income was "income arising from transactions * * * in the regular course of the taxpayer's trade or business" under ORS 314.610(1). S&H invested in three categories of securities: (1) short-term securities held pending use of the funds in the green stamp business; (2) short-term securities held pending acquisition of other companies or favorable developments in the long-term money market; and (3) long-term securities held as an investment. *Id.* at 331. This court ruled that only the first category, the short-term securities that S&H held pending use of those funds in the green stamp business, constituted income arising in the regular course of business. *Id.* at 331-33. That was so because S&H held those short-term securities to satisfy its needs for liquid capital in the green stamp business. As a result, that income was apportionable as business income. *Id.* at 332-33. The other funds that S&H held for investment purposes were not linked directly to the green stamp business and, consequently, were not transactions in the regular course of business operations. *Id.* at 331-32.

In *Simpson Timber*, a timber products company (similar to taxpayers in this case) owned timber land that the government had condemned and taken for public use. The government had paid the owner-taxpayer compensation for the land, together with interest for its delay in paying that compensation ("delay compensation"). 326 Or at 372. The

---

[1] Courts of the states that have adopted statutes similar to ORS 314.610(1) have split as to whether the functional test is a subset of the transactional test or whether it is a separate and independent basis for determining business income. Some courts have held that the second part merely modifies or qualifies the first, and does not constitute a separate test. *See, e.g., Ex Parte Uniroyal Tire Co.,* _____ Ala _____ , 779 So 2d 227 (2000). Others have held that the second part is an independent basis for determining business income. *See, e.g., Pledger v. Getty Oil Exploration Co.*, 309 Ark 257, 831 SW2d 121 (1992). This court's holdings in *Simpson Timber* and *Sperry & Hutchinson* are consistent with the latter view.

issue presented was whether the interest payments constituted "business income." Applying only the functional test, this court held:

> "The ultimate source of the income here was the standing timber and the land on which it was growing, *assets admittedly acquired and used in taxpayer's business as integral parts of it.* The disposition was of those business assets.
>
> "We conclude that, when the timber and land on which it was growing were disposed of by an involuntary sale to the government through condemnation, *that disposition was as much an integral part of the taxpayer's regular business operations for purposes of the statutory definition as were the initial acquisition, management, and use of the timberland.* The additional amount paid because of delay in paying the fair market price is but added income from that regular business disposition. ORS 314.610(1) defines that income as unitary 'business income.' "

*Id.* at 376-77 (emphasis added).

Applying the transactional test here, as discussed in *Sperry & Hutchison*, it does not appear that the royalty that taxpayers received constituted income arising from transactions and activity in the regular course of taxpayers' business. Taxpayers' business is growing timber and making wood products, not producing oil and gas. Receiving royalties on mineral rights was not in the regular course of taxpayers' business as a forest products company.

Applying the functional test, as discussed in *Simpson Timber*, we again conclude that taxpayers' royalty income is not business income under the statute. The functional test addresses transactions involving property, more specifically, the property of businesses that sell or otherwise dispose of property. In *Simpson Timber*, an actual disposition of the land and timber occurred, even though it was a forced disposition through a government taking. Here, by contrast, there was no disposition of the land that contained the minerals. Because there was no actual disposition of the land, taxpayers cannot fulfill the statutory element of a disposition as required under the functional test.

Even if we view the minerals alone as the property, we reach the same result. In *Simpson Timber*, the government taking was a compelled disposition of the land and, especially, the timber. The department levied a tax on the interest income associated with the forced disposition. Here, taxpayers disposed of minerals, and the department seeks to tax the royalty income associated with the minerals. The acquisition, management, use or rental, and disposition of the minerals were not an integral part of taxpayers' regular business operations. Trading in minerals was not an integral part of the business of manufacturing forest products. The evidence shows that it is not essential to taxpayers' business that taxpayers own the underlying mineral rights to their timber lands. Thus, the acquisition, management, use or rental, and disposition of the minerals were not integral to taxpayers' regular business operations of harvesting timber and making forest products. Taxpayers' royalty income, therefore, is not taxable as business income in Oregon.

In sum, we conclude that adoption of OAR 150-314.610(1)(B)(1) was an improper exercise of agency rule-making authority for the reasons stated above. Further, under the definition of "business income" set out in ORS 314.610(1), taxpayer's out-of-state royalty income from its mineral rights was not taxable business income in Oregon.

The judgment of the Tax Court is reversed, and the case is remanded to that court for further proceedings.