**THE MAY DEPARTMENT STORES COMPANY, Successor in Merger with Associated Dry Goods Corporation,** Petitioner,

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9906–TA–144.

Tax Court of Indiana.

May 7, 2001.

652 

Francina A. Dlouhy, J. Daniel Ogren, Baker & Daniels, Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Petitioner, The May Department Stores Company (May), successor in merger with Associated Dry Goods Corporation (Associated), challenges the Indiana Department of State Revenue's (Department) refusal to refund May $384,424.03 in adjusted gross income tax, *see* Ind.Code Ann. § 6-3-2-1 (West 2000), supplemental net income tax, *see* I.C. § 6-3-8-1, and interest for the tax year beginning February 1, 1986 and ending January 31, 1987. The income taxed was primarily generated by Associated's sale of the assets comprising Joseph Horne Co. (Horne), a division of Associated. These gains were initially classified by Associated as nonbusiness income, which under the circumstances made them allocable outside of and nontaxable by Indiana. *See* I.C. § 6-3-1-21. However, the Department reclassified the gains as business income, a move that subjected the gains to apportionment and taxation by Indiana. *See* I.C. § 6-3-1-20. The issue for the Court's consideration is whether the gains were business or nonbusiness income. To resolve this issue, the Court must decide whether Indiana's definition of "business income" requires that both a "transactional" test and a "functional" test be applied in determining whether gains are business or nonbusiness income. The Court considers this issue in the context of May's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The facts are undisputed.[1] May is a New York corporation that is qualified to do business in Indiana. May's principal place of business and commercial domicile is in St. Louis, Missouri. May is engaged in the business of department store retailing. On October 4, 1986, May acquired all of the stock of Associated, which was a Virginia corporation also engaged in department store retailing. Associated's principal place of business and corporate headquarters was in New York City, New York. Effective February 1, 1992, Associated was merged into May.

Prior to its acquisition by May, Associated owned retail department stores throughout the United States. These stores were grouped into divisions. Immediately prior to its acquisition by May, Associated had nine divisions, including Horne.[2] "Through its divisions, Associated was engaged in the business of department store retailing, buying and selling at retail clothing, apparel and accessories, home furnishings and related items." (Manos Aff. ¶ 4.) Horne, which was not separately incorporated, operated twelve store sites in Pennsylvania and four store sites in Ohio.

Adcor Realty Corporation (Adcor) was a wholly-owned subsidiary of Associated. It was a New York corporation with its principal office in New York City, New York. Adcor served as the holder of legal title to and other interests in much of the real estate used by Horne as well as Associated's other divisions. Like Associated, Adcor was merged into May effective February 1, 1992.

May announced its intention to acquire Associated in 1986. At that time, Kauffman's Department Store, a division of May, was conducting business in Pittsburgh, Pennsylvania. Horne operated ten store sites in or near Pittsburgh. The City of Pittsburgh feared that, after the proposed acquisition, May would monopolize the business of department store retailing in the area. Therefore, prior to May's acquisition of Associated, an action against May and Associated by the City of Pittsburgh and others was brought in the United States District Court for the Western District of Pennsylvania; the plaintiffs alleged that the proposed acquisition "would substantially lessen competition and tend to create a monopoly in violation of Section 7 of the Clayton Act." (Manos Aff. ¶ 10.)

The action was resolved by stipulation of the parties on September 24, 1986. The Stipulation and Order (Order) required May to "divest all of the assets and interests" of Horne.[3] (Manos Aff., Ex. A.) By the Order's terms, May was obligated to take steps to open those stores of Horne that had previously been scheduled for opening. Moreover, May was responsible for maintaining Horne in good operating

---

1. The facts are drawn primarily from the Affidavits of John M. Manos and Ron W. Saettele. Manos was Senior Counsel and Assistant Secretary for May and had previously been employed by Associated. Saettele was the Director of State & Local Taxes for May.

2. The other eight divisions included the following: L.S. Ayres and Co., Lord & Taylor, J.W. Robinson Co., Sibley, Lindsay & Curr Co., The Denver Dry Goods Co., Goldwaters, Hahne & Co., and Robinson's of Florida.

3. The Order required May to divest the assets of Horne. However, as discussed *infra*, Associated actually divested Horne's assets in 1986, not May. Associated did not merge into May until 1992. Associated earned the income from the sale of Horne's assets, and it is this income that the Department taxed. May is prosecuting this original tax appeal as the successor in merger with Associated. Therefore, the Court's analysis will focus on how the divesture of Horne's assets relates with Associated's business operations and not those of May.

condition so that it could be divested as a "viable competitive entity." (Manos Aff., Ex. A.) One Horne store site was sold by Associated on December 19, 1986. On December 29, 1986, all of Horne's remaining assets were sold by Associated. In like manner, Adcor was required to sell any title to or interest in real estate used by Horne that it held.

Associated and certain of its subsidiaries, including Adcor, filed a consolidated Indiana adjusted gross income tax and supplemental income tax return for the tax year. On that return, the gains from the sale of Horne's assets that were realized by Associated and Adcor ($66,191,088) were reported as nonbusiness income. The Department audited the consolidated return for the tax year. On October 5, 1990, the Department issued a proposed assessment of additional adjusted gross income and supplemental net income tax against Associated and its affiliates. This assessment was attributable to the Department's reclassification of the gain from the sale of Horne's assets from nonbusiness income to business income.

On December 3, 1990, Associated protested the proposed assessment, and the Department thereafter conducted a hearing on the protest. On April 28, 1993, the Department issued a letter of findings denying Associated's protest. The Department issued a final assessment for the tax year on June 25, 1993. May, as successor in merger with Associated, paid the Department $384,424.03 ($247,555 in tax and $136,869.03 in interest).

On June 14, 1996, May filed a refund claim for the tax year. The Department has issued no final determination on this refund claim. On June 11, 1999, May filed this original tax appeal. May filed a motion for summary judgment on March 1, 2000. The Court conducted a hearing on the motion on July 13, 2000. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

■ The Court hears appeals of refund claims de novo.[4] I.C. § 6–8.1–9–1(d). Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. IND. TRIAL RULE 56(C); *Mynsberge v. Department of State Revenue,* 716 N.E.2d 629, 631 (Ind. Tax Ct.1999). Questions of statutory interpretation are particularly amenable to resolution by summary judgment. *Mynsberge,* 716 N.E.2d at 631.

### Discussion

■ The parties dispute the definition of "business income." The issue before the Court is one of first impression in Indiana, although it has been much debated in other jurisdictions across the country. Pursuant to IND.CODE § 6–3–1–20,

> The term "business income" means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitutes integral parts of the taxpayer's regular trade or business operations.

"Nonbusiness income," in turn, "means all income other than business income." I.C.

---

4. The Court has jurisdiction to hear an original tax appeal where, as in the present case, the "taxpayer has waited at least 181 days (and less than three years) but has received no determination from the Department regarding [its] claim for refund." *City Secs. Corp. v. Department of State Revenue,* 704 N.E.2d 1122, 1125 (Ind. Tax Ct.1998) (citing I.C. § 6–8.1–9–1(c)).

§ 6–3–1–21. The distinction between business and nonbusiness income is important in calculating a taxpayer's income tax liability. Indiana corporations pay the greater of the gross income tax or adjusted gross income tax, plus the supplemental income tax. *Longmire v. Indiana Dep't of State Revenue*, 638 N.E.2d 894, 896 (Ind. Tax Ct.1994) (citing I.C. § 6–3–3–2). Pursuant to IND.CODE § 6–3–2–2, for the purpose of calculating a corporation's adjusted gross income tax liability, business income is apportioned between Indiana and other states using a three-factor formula,[5] while nonbusiness income is allocated to Indiana or another state.[6] A corporation's net income is its adjusted gross income, with certain adjustments. I.C. § 6–3–8–2(b). Thus, whether income is deemed business or nonbusiness income determines whether it is allocated to a specific state or whether it is apportioned between Indiana and other states wherein the taxpayer is conducting its trade or business.

Indiana's definition of business income mirrors that found in the Uniform Division of Income for Tax Purposes Act (UDITPA), although Indiana has not adopted UDITPA. *See* JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 9.01 (Table 9–1) (3d ed. 1998 & Supp. 2000) (listing states that have adopted UDITPA). Drafted in the mid 1950s, UDITPA in part sought to "promote uniformity in allocation practices among the states that impose tax on or measured by the net income of a corporation."[7] R. Crawford &

---

5. The three-factor formula is found at IND CODE § 6–3–2–2(b), which provides in part:

 [I]f business income of a corporation ... is derived from sources within the state of Indiana and from sources without the state of Indiana, then the business income derived from sources within this state shall be determined by multiplying the business income from sources both within and without the state of Indiana by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three (3).

 "Effective January 1, 1992, the Indiana General Assembly changed the method of formulary apportionment to phase in a double weight sales factor." *Hunt Corp. v. Department of State Revenue*, 709 N.E.2d 766, 772 n. 13 (Ind. Tax Ct.1999) (citing I.C. § 6–3–2–2(b)). The property, payroll and sales factors are further explained by IND. Code §§ 6–3–2–2(c)(e). *See also Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 170, 103 S.Ct. 2933, 2943, 77 L.Ed.2d 545 (1983) (observing that the "three-factor formula ... has become ... something of a benchmark against which other apportionment formulas are judged"); *Sherwin–Williams v. Indiana Dep't of State Revenue*, 673 N.E.2d 849, 851 (Ind. Tax Ct.1996) (stating that "Indiana has adopted a standard form apportionment method"); JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE TAXATION ¶ 9.02 (3d ed. 1998 & Supp.2000) (observing that under the three-factor formula, "a taxpayer's income is attributed to the state on the basis of a percentage determined by averaging the ratios of the taxpayer's property, payroll, and sales within the state to its property, payroll, and sales everywhere").

6. Indiana's "allocation rules are based on the commercial domicile of the corporation and the business situs of the income producing activity." *Hunt Corp.*, 709 N.E.2d at 771. *See also* I.C. §§ 6–3–2–2(g) to –2(k) (allocation rules); *Polaroid Corp. v. Offerman*, 349 N.C. 290, 507 S.E.2d 284, 288 (1998), *cert. denied*, 526 U.S. 1098, 119 S.Ct. 1576, 143 L.Ed.2d 671 (1999) (observing that nonbusiness income is "allocated in a manner whereby it is taxed only by the state with which the asset that generated the income is most closely associated").

7. Similarly, the Multistate Tax Compact "was developed in 1967 to promote uniformity in the taxation of multistate businesses." HELLERSTEIN, *supra* ¶ 9.05[1][a] n. 89. *See also Polaroid Corp.*, 507 S.E.2d at 288 ("The Compact was created to promote uniformity and compatibility in significant components of state tax systems and to avoid duplicative taxation."). The Multistate Tax Commission is the administrative agency of the Compact. HELLERSTEIN, *supra* ¶ 9.05[1][a] "One of the Commission's central goals is to promote uniformity in the states' taxation of interstate and

R. Uzes, *The Distinction Between Business and Nonbusiness Income*, THE STATE & LOCAL TAX PORTFOLIO SERIES ¶ 505.3 (1989 & Supp.1994). *See also Pledger v. Getty Oil Exploration Co.*, 309 Ark. 257, 831 S.W.2d 121, 124 (1992) ("UDITPA is designed to fairly apportion among the states in which a corporation does business the fair amount of regular business income earned by the corporation's activities in each state."); HELLERSTEIN, *supra* ¶ 9.01 (stating "[m]ost states have sought to discharge their constitutional obligation to confine their corporate income taxes to income derived from the corporation's activities in the taxing state by adopting [UDITPA] or a closely analogous statute"). The key features of UDITPA and the Indiana statute are the concepts of "alloca-

tion" and "apportionment." "When income is allocated, it is attributed to the particular state or states that are considered to be the source of the income.... When income is apportioned, ... it is divided among the various states in which the taxpayer derives such apportionable income." HELLERSTEIN, *supra* ¶ 9.02. *See also Roger Dean Enters., Inc. v. Department of Revenue*, 387 So.2d 358, 361 (Fla. 1980) (explaining meanings of "allocation" and "apportionment" and stating that the "two are entirely separate, distinct, and different concepts"). "Under UDITPA and similar taxing regimes, all 'business income' is apportioned; all 'nonbusiness income' is allocated." [8] HELLERSTEIN, *supra* ¶ 9.02.

---

foreign commerce." *Polaroid Corp.*, 507 S.E.2d at 288. The Commission is authorized by the Compact to adopt uniform regulations relating to Article IV of the Compact, which embodies UDITPA. HELLERSTEIN, *supra* ¶ 9.05[1] [a] n. 90. A number of jurisdictions have enacted UDITPA by becoming parties to the Compact. *Id.*, ¶ 9.01 (Table 9–2) (listing states, as well as District of Columbia, where Compact has been adopted). Moreover, several jurisdictions have adopted the Commission's regulations in whole or in part. *Id.* (Table 9–4) (listing states that have adopted Commission's regulations). "The [Commission's] regulations construe UDITPA as establishing a presumption in favor of apportionment." *Id.*, ¶ 9.05[1] [a]. Indiana has neither joined the Compact nor adopted the Commission's regulations. Thus, the Commission's regulations are not binding on this Court. *See id.*, ¶ 9.05[1] [a] (noting that regulations have no legal force in any state unless that state adopts the regulations in accordance with its own rulemaking process). *Cf. Benham v. State*, 637 N.E.2d 133, 137 n. 3 (Ind. 1994) (rejecting use of commentary of Indiana's penal code, where there was "no evidence ... that it was adopted or even considered by the legislature").

**8.** There are constitutional limitations on what income may be deemed as part of a taxpayer's apportionable base. *Hunt Corp. v. Department of Revenue*, 709 N.E.2d 766, 770 (Ind. Tax Ct.1999) (citing *Container Corp.*, 463 U.S.

at 165–66, 103 S.Ct. at 2940–41). "These limitations arise from the unitary business principle." *Id.* As explained in HELLERSTEIN, *supra* ¶ 8.07[1],

> Under the unitary business principle, if a taxpayer is carrying on a single "unitary" business within and without the state, the state has the requisite connection to the out-of-state activities of business to justify inclusion in the taxpayer's apportionable tax base of all the property, income, or receipts attributable to the combined effect of the out-of-state and in-state activities. By the same token, if the taxpayer's activities carried on within the state are not unitary with its activities carried on elsewhere, the state is constitutionally constrained from including the property, income, or receipts arising from those out-of-state activities in the taxpayer's apportionable tax base.

*Accord Hunt Corp.*, 709 N.E.2d at 770. *See also* I.C. § 6–5.5–1–18 (defining "unitary business" and presuming that unity is present where there is unity of "ownership, operation, and use"). As the United States Supreme Court has noted, the "linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil Corp. v. Commissioner of Taxes of Vt.*, 445 U.S. 425, 439, 100 S.Ct. 1223, 1232, 63 L.Ed.2d 510 (1980). *See also Allied–Signal, Inc. v. Director, Div. of Taxation*,

The Court will construe and interpret a statute only if it is unclear and ambiguous. *Shoup Buses, Inc. v. Indiana Dep't of State Revenue*, 635 N.E.2d 1165, 1167 (Ind. Tax Ct.1994). When a statute is susceptible to more than one interpretation, it is ambiguous. *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993). Although a disagreement between the parties does not necessarily indicate ambiguity, "opposing interpretations are persuasive in suggesting that an ambiguity exists." *Shoup Buses*, 635 N.E.2d at 1168. When construing a statute, the Court's function is to give effect to the intent of the General Assembly in enacting the statutory provision. *Mynsberge*, 716 N.E.2d at 632. Generally, the best evidence of that intent is found in the language of the statute chosen by the General Assembly. *Id.* The Court will strive to give words and phrases in a statute their plain, ordinary and usual meaning. *Uniden Am. Corp. v. Indiana Dep't of State Revenue*, 718 N.E.2d 821, 824 (Ind. Tax Ct.1999). Tax imposition statutes are to be strictly construed against the imposition of the tax. *Mynsberge*, 716 N.E.2d at 633. However, the policy of strict construction will not override the plain language of a tax imposition provision. *Id.* Further, the Court must read a statute to give effect to every word. *USAir, Inc. v. Indiana Dep't of State Revenue*, 623 N.E.2d 466, 470 (Ind. Tax Ct.1993). The Court will strive to avoid an interpretation that renders any part of the statute meaningless or superfluous. *Id.* at 469; *Mynsberge*, 716 N.E.2d at 633.

## I. Other Jurisdictions

Courts in other states have applied differing interpretations to the business income definition. Although not binding on this Court, the decisions from other states are instructive. *USAir, Inc.*, 623 N.E.2d at 469 n. 4. Some courts have found that the business income definition includes both a "transactional" and a "functional" test; other courts have construed the business income definition as providing for only a transactional test. HELLERSTEIN, *supra* ¶ 9.05[2] (listing in footnotes 101 & 102 cases adopting one or both tests). The differing interpretations arise from the imprecise language and awkward structure used to define "business income."

## A. Transactional Test

Those jurisdictions supporting only the transactional test rely upon the first part of the definition, i.e., business income "means income arising from transactions and activity in the regular course of the taxpayer's trade or business." I.C. § 6-3-1-20. Under the transactional test, the "controlling factor by which business income is identified is the nature of the particular transaction giving rise to the income." *General Care Corp. v. Olsen*, 705

---

504 U.S. 768, 778–83, 112 S.Ct. 2251, 2258–61, 119 L.Ed.2d 533 (1992) (summarizing unitary-business principle's development). *See generally* Franklin C. Latcham, *Definition of a Unitary Business*, THE STATE & LOCAL TAX PORTFOLIO SERIES ¶ ¶ 100–120 (1989 & Supp.1994) (discussing development and standards for application of unitary business principle and noting that the "concept ... is vital to the application of formulary apportionment and is an important consideration in resolving the issue of business-nonbusiness income").

The Department classified the gains from the sale of Horne's assets as business income. Thus, the Department found that Associated and Horne engaged in a unitary business operation. *See Hunt Corp.*, 709 N.E.2d at 777. May, the successor in merger with Associated, does not dispute this conclusion. Absent affirmative representations by either party, the Court will not presume that a dispute exists on this point. *See id.*

S.W.2d 642, 644 (Tenn.1986) (internal quotations and brackets removed). In deciding whether a specific transaction generated business income, pertinent considerations include: (1) the frequency and regularity of similar transactions; (2) the former practices of the business; and (3) the taxpayer's subsequent use of the income. *Id.* Accord *Polaroid Corp. v. Offerman,* 349 N.C. 290, 507 S.E.2d 284, 289 (1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1576, 143 L.Ed.2d 671 (1999). *See also Western Natural Gas Co. v. McDonald,* 202 Kan. 98, 446 P.2d 781, 783 (1968) ("The controlling factor by which the statute identifies business income is the nature of the particular transaction giving rise to the income. To be business income the transaction and activity must have been in the regular course of taxpayer's business operations."); *In re Kroger,* 270 Kan. 148, 12 P.3d 889, 893 (2000) (same); *Phillips Petroleum Co. v. Iowa Dep't of Revenue and Fin.,* 511 N.W.2d 608, 610–11 (Iowa 1994) (stating that test for identifying business income is "basically transactional" and concluding that gains from taxpayer's sale of assets constituted nonbusiness income, where disposition of assets was irregular in its scope and nature).

The Alabama Supreme Court recently concluded that the business income definition contained only the transactional test. *Ex parte Uniroyal Tire Co.,* 779 So.2d 227, 238 (Ala.2000). In *Ex parte Uniroyal Tire Co.,* the Uniroyal Tire Company (Uniroyal) entered into a partnership with B.F. Goodrich Company. Thereafter, Uniroyal's only asset was its partnership interest; income from the partnership was treated as business income. In 1990, Uniroyal sold its entire partnership interest, realizing a gain of approximately 99.7 million dollars. On its 1990 Alabama tax return, Uniroyal treated the gain as nonbusiness income. The State Department of Revenue disagreed, maintaining that the income

was business income and assessing corporate income tax accordingly.

The Alabama Supreme Court first observed that the word "and" in the phrase "acquisition, management, and disposition of the property" was conjunctive, not disjunctive. *Id.* at 233. According to the Alabama Supreme Court, reading the word "or" in place of "and" would allow the statute to be construed so broadly as to eclipse entirely the transactional test. *Id.* at 235. The functional test, the Court pointed out, would "essentially render[ ] nugatory the transactional test." *Id.* The Court then noted that the legislature would not be presumed to have enacted a futile, meaningless statute. *Id.* at 236. The Alabama Supreme Court posited that the "complete liquidation and cessation of business do[es] not generate business income under the transactional test," because such events do not take place in the regular course of the taxpayer's business. *Id.* The Court explained that: "Simply stated, Uniroyal was not in business to go out of business. Going out of business is not a 'regular' business activity." *Id.* at 237. Thus, Uniroyal's gain was found to be nonbusiness income. *Id.* at 238.

## B. Functional Test

■■■ Those jurisdictions supporting a functional test, in addition to the transactional test, rely upon the second part of the definition, i.e., business income "includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitutes integral parts of the taxpayer's regular trade or business operations." I.C. § 6–3–1–20. As described by one court, "under the functional test, all gain from the disposition of a capital asset is considered business income if the asset disposed of was 'used by the taxpayer in its regular trade or business operations.' ... Under the

functional test, ... the extraordinary nature or infrequency of the sale is irrelevant." *Texaco–Cities Serv. Pipeline Co. v. McGaw,* 182 Ill.2d 262, 230 Ill.Dec. 991, 695 N.E.2d 481, 484–85 (1998) (citations omitted). *See also District of Columbia v. Pierce Assocs., Inc.,* 462 A.2d 1129, 1131 (D.C.1983) ("If the property had an integral function in the taxpayer's unitary business, its income properly can be apportioned and taxed as business income, even though the transaction itself does not reflect the taxpayer's normal trade or business.").

In an opinion issued November 17, 2000, the Oregon Supreme Court concluded that the state's business income definition supported both a transactional and functional test. In *Willamette Indus., Inc., & Subsidiaries v. Department of Revenue,* 331 Or. 311, 15 P.3d 18 (2000), Willamette and its two subsidiaries received net oil and gas royalty income from unrelated companies drilling on parts of their timberlands in Louisiana, Arkansas and Oregon. The taxpayers allocated the royalties to the states where the timberland was located. The Department of Revenue determined that the receipt of royalties was business income, because it occurred as part of the taxpayers' regular business activities.

Examining the statutory definition of business income,[9] the Oregon Supreme Court recognized the presence of two tests in the statute, a transactional and functional test. *Id.* at 21 (citing *Simpson Timber Co. v. Department of Revenue,* 326 Or. 370, 953 P.2d 366 (1998)). In so doing, the Court stated,

> The transactional test posits that business income arises from transactions in the regular course of the taxpayer's business. By contrast, the functional test dictates that acquisition, management, use or rental, *and* disposition of property must constitute integral parts of regular business operations. Under the functional test, income includes, for example, royalty income if the acquisition, management, use or rental, and disposition of the property that produces the royalty [are] also an integral part of the taxpayer's regular business operations.

*Id.* First, the Court determined that the royalties at issue did not constitute business income under the transactional test. *Id.* at 22. The Court reasoned that the taxpayers' business was growing timber and making wood products, not producing oil and gas. *Id.* Therefore, "[r]eceiving royalties on mineral rights was not in the regular course of taxpayers' business as a forest products company." *Id.*

Second, the Court held that, under the functional test, the royalty income was not business income. *Id.* According to the Court, the "functional test addresses transactions involving property, more specifically, the property of businesses that sell or otherwise dispose of property." *Id.* In the case at bar, "there was no disposition of the land that contained the minerals," so the taxpayers could not "fulfill the statutory element of a disposition as required under the functional test." *Id.* Even viewing the minerals alone as the property, the Court maintained that trading in minerals was not an integral part of the business of manufacturing forest products. *Id.* Accordingly, the Court stated that the evidence showed that it was "not

---

9. Oregon's definition of business income is slightly different than Indiana's; it "includes income from tangible and intangible property if the acquisition, the management, *use or rental,* and the disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." Or.Rev. Stat. § 314.610(1) (emphasis added). This difference has no impact on the Court's analysis.

essential to the taxpayers' business that taxpayers own[ed] the underlying mineral rights to their timber lands." *Id.* "Thus, the acquisition, management, use or rental, and disposition of the minerals were not integral to the taxpayers' regular business operations of harvesting timber and making forest products." *Id.* Consequently, the Court concluded that the royalties were not business income as defined by the statute. *Id. See also Laurel Pipe Line Co. v. Commonwealth,* 537 Pa. 205, 642 A.2d 472, 475–77 (1994) (concluding that taxpayer's sale of idle pipeline was non-business income, where pipeline was not disposed of as an integral part of taxpayer's regular trade or business and the "effect of the sale was that the company liquidated a portion of its assets").

## II. Indiana

At first blush, Indiana's definition of business income is ambiguous. The above cases involve similar definitions of business income, which are essentially UDITPA's definition. They demonstrate that the definition of business income is susceptible to more than one interpretation. As written, IND.CODE § 6–3–1–20 could be reasonably interpreted as providing for only the transactional test or for both the transactional and functional tests. Therefore, the Court will construe and interpret this section.

The Court examines the language and structure used in the statute. Both parties contend that the plain language of IND.CODE § 6–3–1–20 supports their respective positions. May argues that the word "and" is conjunctive and that the words "and includes" are words of limitation, so that the words following "and includes" limit or further explain the first part of the definition of business income ending with "income arising from transactions and activity in the regular course of the taxpayer's business." May asserts that the definition's two parts "must be read together as one single, coherent definition." (Pet'r Br. at 12.) According to May, had the General Assembly intended to have two tests, it could have used the word "or" to connect the first and second parts or, more definitively, used two separate sentences. Further, to support its position that the words "and includes" are words of limitation, May relies upon the Indiana Supreme Court's decision in *Department of Treasury of Indiana v. Muessel,* 218 Ind. 250, 32 N.E.2d 596, 598 (1941), where the Court observed that the word "including" ordinarily is viewed as a term of limitation. The Department counters that in ordinary use "and" is used to conjoin two words, clauses or sentences, so that as used in IND.CODE § 6–3–1–20, "and" is "joining two independent clauses and means that income includes that described in the first clause as well as that described in the second clause." (Resp't Br. at 5.)

The plain, ordinary and usual meaning of a word is usually found in a dictionary. *Precedent v. State Bd. of Tax Comm'rs,* 659 N.E.2d 701, 705 (Ind. Tax Ct.1995). "And" is defined in BLACKS LAW DICTIONARY 56 (6th ed. abridged 1991) as "A conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first. Added to; together with; joined with; as well as; including. Sometimes construed as 'or.'" As one Indiana Court of Appeals' case asserts, the word "and" is "used to join sentence elements of the same grammatical rank or function." *Scott v. Marshall County Bd. of Zoning Appeals,* 696 N.E.2d 884, 886 (Ind.Ct.App.1998) (quoting WEBSTER'S COLLEGIATE DICTIONARY (10th ed.1995)). *Accord* HOOPER ET AL., ESSENTIALS OF ENGLISH 34 (1990) (identifying "and" as a "coordinating conjunction" that "join[s] sentence elements of equal importance"). Considered alone, the word "and" as used in IND.CODE § 6–3–1–20 to sepa-

rate the two parts of the business income definition does not clearly support recognition of either a single transactional test or for both a transactional and functional test.

However, the Court does not consider use of the word "and" alone; rather the Court looks at all the words in the business income definition. First, the Court considers the word "includes." May argues that "includes" has the same meaning as the word "including." The Indiana Supreme Court, in *Muessel*, 32 N.E.2d at 598, viewed the term "including" as a term of limitation. In *Muessel*, the issue was whether the redistribution of stock by a holding company to the original owners of the stock constituted taxable income to the owners under the Gross Income Tax Law of 1933. The statute in question defined "gross income" in part as "all receipts by reason of the investment of capital, *including* interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated." *Muessel*, 32 N.E.2d at 597 (emphasis added). The state contended that the receipt of stock constituted "receipts by reason of investment of capital." *Id.* The Court viewed the term "including" as ordinarily a "word of limitation." *Id.* at 598. That being so, the words "interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated" identified the "type of receipts from the investment of capital which the legislature intended to tax by this provision, namely, all types of profits or earnings." *Id.* As used in the gross income tax statute, "including" meant the same as the words "such as." *Id.*

The structure of the statute at issue in *Muessel* is different than the structure of IND.CODE § 6–3–1–20. The gross income definition found in *Muessel* uses the participle "including" to introduce a modifying phrase that limits the noun phrase "all

receipts by reason of the investment of capital." In contrast, IND.CODE § 6–3–1–20 has a subject, "business income," and a compound verb, "means" and "includes." The difference in the two statutes' structures is significant. "Including" is part of a modifying phrase. As such, it has less weight or importance within the sentence than do the verbs "means" and "includes." These verbs indicate that a meaningful statement or explanation follows. *See* HOPPER ET AL., *supra* at 14 (stating that finite verbs work with subjects of sentences "to give a sense of completeness"). Here, definitional noun phrases follow these two verbs. It would be unreasonable and illogical to equate "including," as used in the gross income tax statute at issue in *Muessel*, with the word "includes" as used in IND.CODE § 6–3–1–20. Consequently, *Muessel* does not support May's contention that "includes" is a word of limitation.

█ To read IND.CODE § 6–3–1–20 as having a single definition of business income ignores the statute's use of the compound verb "means" and "includes." Within the business income definition, these verbs have equal importance. The noun phrases following both verbs describe what constitutes business income. May's interpretation of business income would essentially erase the noun phrase following "includes" by ignoring its distinct definitional language. The Court will read a statute in a way that gives effect to every word within the statute and will strive to avoid an interpretation that renders part of the statute meaningless or superfluous. Therefore, the Court finds that, in passing IND.CODE § 6–3–1–20, the General Assembly provided two tests for defining business income. *See Polaroid Corp.*, 507 S.E.2d at 290–91 (explaining that structure of definition and legislature's use of different language between two parts of defini-

tion supported two "distinct" tests for business income). As do other jurisdictions, the Court will refer to these as the "transactional" and "functional" tests.[10]

■ Having decided that two tests are provided for, the Court will examine whether the gains generated by Associated's sale of Horne's assets met either test.[11] The sale of Horne liquidated the assets of an entire division of Associated. Selling an entire division was not a regular business practice of Associated. *See Phillips Petroleum Co.*, 511 N.W.2d at 611 (holding that transactional test was not met because the sale of corporation's assets "did not occur in the regular course of [taxpayer's] business"). In other words, Associated was not in business to sell off entire divisions. *See Pledger*, 831 S.W.2d at 125 (concluding that transfer of promissory note to taxpayer was an "extraordinary and non-recurring event" that "was not a transaction that occurred in the *regular course* of the taxpayer's business"). The transactional test has not been met in the present case.

The Department briefly argues that the transactional test has been met. The Department asserts that the sale of Horne's assets was not an unforeseen event, that May knew that it would have to divest itself of Horne's assets at the time it purchased Associated and therefore the sale of Horne's assets was "planned as part of [May's] regular business activity."[12] (Resp't Br. at 12.)

---

10. The Department contends that its regulation supports both a transactional and functional test. The Department's regulation provides in part that "business income" is "income from transactions and activity in the regular course of the taxpayer's trade or business, *including* income from tangible and intangible property if the acquisition, management, *or* disposition of the property are integral parts of the taxpayer's regular trade or business." IND. ADMIN CODE tit. 45, r. 3.1–1–29 (1996) (emphasis added). As discussed *supra*, the Indiana Supreme Court generally considers "including" a term of limitation. Therefore, the Department's regulation seems to recognize only the transactional test. The Court will give deference to an agency's interpretation of its own regulation, unless its interpretation would be inconsistent with the regulation. *State Bd. of Tax Comm'rs v. Two Market Square Assocs. Ltd. Partnership*, 679 N.E.2d 882, 886 (Ind.1997). In this case, the Department's interpretation is inconsistent with its own regulation. Moreover, recognition of only the transactional test would run counter to legislative intent as evidenced by the language and structure of IND CODE § 6–3–1–20. The Department "may not adopt a regulation that is out of harmony with a statutory provision." *Department of State Revenue, Inheritance Tax Div. v. Estate of Hardy*, 703 N.E.2d 705, 709 (Ind. Tax Ct.1998). To the extent it adopts only a transactional test, IND. ADMIN. CODE tit. 45, r. 3.1–1–29 is invalid.

The Court notes that this regulation also appears defective in that it includes a taxpayer's income from property where the "acquisition, management, *or* disposition" of the property is an integral part of the taxpayer's regular trade or business. 45 I.A.C. 3.1–1–29. As discussed *infra*, IND.CODE § 6–3–1–20 requires that not only the property's disposition but also its acquisition and management must be integral parts of the taxpayer's regular trade or business. To the extent the Department's use of "or" means that not all three actions (i.e., acquisition, management and disposition) must be taken with respect to the property divested or disposed of, the Department's regulation improperly expands the statute's meaning. *See C & C Oil Co., Inc. v. Indiana Dep't of State Revenue*, 570 N.E.2d 1376, 1381 (Ind. Tax Ct.1991) ("The Department cannot, however, enlarge or vary by its rules and regulations the power conferred on it by the legislature.").

11. In referencing the gains from the sale of Horne's assets, the Court also includes the gains generated by Adcor's sale of title to or interest in real estate used by Horne.

12. The Department also contends that, because Horne generated business income prior to its sale, the sale of Horne's assets should likewise be deemed to generate business income. This argument is misplaced, as it is actually based upon the functional test. With

The Department's own regulation states that the "critical element in determining whether income is 'business income' or 'nonbusiness income' is the identification of the transactions and activity which are the elements of a particular trade or business." 45 I.A.C. 3.1–1–29. In determining the scope of a taxpayer's trade or business, the Department looks to various factors. One factor to examine is the "frequency, number, or continuity of the activities and transactions involved." [13] 45 I.A.C. 3.1–1–30. There is no question that the sale of Horne's assets was planned, as the Department indicates. However, the planned transaction was a one-time event, where Associated liquidated the assets of a distinct and separate business division.[14] Associated was in the business of department store retailing, not buying and selling the assets of entire divisions. This was an extraordinary transaction that fell beyond the scope of even the Department's regulations defining a taxpayer's trade or business. Associated's gains did not qualify as business income under the transactional test. *Cf. Phillips Petroleum Co.*, 511 N.W.2d at 611 (concluding that transactional test was not met, where a complete liquidation of corporation's assets did not take place but where "enormity of the disposition was . . . a once-in-a-corporate-lifetime occurrence").

■ The Court next examines whether the sale of Horne's assets met the functional test. The functional test focuses on the property being disposed of by the taxpayer. *See Willamette Indus.*, 15 P.3d at 22. Specifically, the functional test requires the Court to examine the relationship of the property at issue with the business operations of the taxpayer. *See Texaco–Cities Serv. Pipeline*, 230 Ill.Dec. 991, 695 N.E.2d at 486 (noting that the "reach of the [functional test] is . . . directed towards the use or disposition of the property as forming an integral part of the taxpayer's business"). By the very terms of the statute, the "acquisition, management, and disposition" of the property generating income must constitute an "integral" part of the taxpayer's regular trade or business operations. I.C. § 6–3–1–20. Thus, the property at issue must have been acquired, managed *and* divested or disposed of by the taxpayer. More importantly, this process (i.e., acquisition, management and disposition) must be *integral* to the taxpayer's regular trade or business operations. It is not enough that the property was used to generate business income for the taxpayer prior to its disposition. The disposition too must be an integral part of the taxpayer's regular trade or business operations.

■ The term "integral" may be defined as "part or constituent component necessary or essential to complete the

---

this argument, the Department improperly looks to the use of Horne's divested assets prior to their sale as a determining factor instead of examining the nature of the transaction in which the assets were sold. *See General Care Corp.*, 705 S.W.2d at 644.

**13.** As provided by IND. ADMIN. CODE tit. 45, r. 3.1–1–30, the Department also considers the following in determining the scope of a taxpayer's trade or business: (1) the nature of the taxpayer's trade or business; (2) the substantiality of the income derived from activities and transactions and the percentage that

income is of the taxpayer's total income for a given tax period; (3) the length of time the property producing income was owned by the taxpayer; and (4) the taxpayer's purpose in acquiring and holding the property producing income.

**14.** The Department's argument on this point should focus on the regular trade and business activities of Associated, which sold Horne's assets and earned the income at issue—not that of May, which was the successor in merger with Associated.

whole." BLACK'S LAW DICTIONARY 558 (6th ed. abridged 1991). *See also Texaco–Cities Serv. Pipeline*, 230 Ill.Dec. 991, 695 N.E.2d at 485 (noting that "integral" in part means "essential to completeness"). *Accord Polaroid Corp.*, 507 S.E.2d at 292. Under the functional test, the frequency of the transaction generating gain is not a key consideration. *Texaco–Cities Serv. Pipeline*, 230 Ill.Dec. 991, 695 N.E.2d at 485 (citing *Ross–Araco v. Commonwealth of Pa., Bd. of Finance & Revenue*, 544 Pa. 74, 674 A.2d 691, 693 (1996)). Thus, even though Associated's sale of Horne's assets was an uncommon transaction in the course of its regular trade or business operations, the gains from that transaction could theoretically be classified as business income. However, it will only be viewed as business income if the acquisition, management and disposition of Horne's assets can be considered necessary or essential to Associated's regular trade or business operations. *See id.* (observing that the "sale of property will constitute business income if the property and sale are essential to the taxpayer's business operations").

It was not. Associated, through all of its divisions, including Horne, was engaged in the business of department store retailing. The *disposition* of Horne's assets was neither a necessary nor an essential part of Associated's department store retailing business operations. Horne was unquestionably an integral part of Associated's business operations. Indeed, Horne was being expanded at the time May acquired Associated's stock. However, pursuant to the Order, the divestiture of Horne's assets was for the benefit of a competitor and not for the benefit of Associated. Under these circumstances, this divesture (or disposition of assets) could not have constituted an integral part of Associated's regular trade or business operations. *See Laurel Pipe Line Co.*, 642 A.2d at 475 & 476 (citing *McVean & Bar-*low, Inc. v. New Mexico Bureau of Revenue*, 88 N.M. 521, 543 P.2d 489 (Ct.App. 1975), *cert. denied* ). Therefore, the gains from the sale of Horne's assets did not qualify as business income under the functional test.

## CONCLUSION

■ The language and structure of IND.CODE § 6–3–1–20 supports the conclusion that the General Assembly intended to define business income via application of both a transactional and functional test. The Court agrees with the Oregon Supreme Court that the functional test requires that the disposition of the assets at issue must, along with their acquisition and management, constitute an integral part of the taxpayer's regular trade or business operations. *Willamette Indus.*, 15 P.3d at 22. In the present case, Associated divested an entire division for the benefit of a competitor pursuant to a court order. This divestiture was not an essential part of its department store retailing operations. Furthermore, the Court disagrees with the Alabama Supreme Court that recognition of the functional test renders the transactional test language futile. *See Ex parte Uniroyal Tire Co.*, 779 So.2d at 235.

Neither the transactional nor the functional test was met in the present case. Therefore, the Court concludes that the gains received by Associated from the sale of Horne's assets did not qualify as business income. Rather, the gains must be considered nonbusiness income. Accordingly, the Department's refusal to grant May's requested refund was erroneous. As a matter of law, May, as successor in merger with Associated, was entitled to a refund of all tax and interest paid to the Department as a result of the

Department's reclassification of Associated's gains from nonbusiness to business income. May's motion for summary judgment is GRANTED. This matter is REMANDED to the Department with instructions to calculate the refund, with statutory interest, due May.[15]

**15.** As evidenced by the conflicting opinions of jurisdictions interpreting the UDITPA-based definition of business income, the definition is not a model of clarity. The General Assembly is in the best position to remedy this problem. As observed by the Alabama Supreme Court, legislatures in three states (Tennessee, New Mexico and Iowa) responded to court opinions failing to recognize a functional test by amending their definitions of business income. *Ex parte Uniroyal Tire Co.*, 779 So.2d at 235. Moreover, the Court further notes that North Carolina's Supreme Court, in *Polaroid Corp. v. Offerman*, interpreted the state's definition of business income, which read in part "acquisition, management, *and/or* disposition of the property," as being "slightly broader than the definition found under [UDITPA]." 349 N.C. 290, 507 S.E.2d 284, 288 n. 3 (1998).